UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ISAAC KODSI,

      Debtor.

_____/

Case No. 13-40134-LMI
Chapter 7

BARRY E. MUKAMAL, CHAPTER 7
TRUSTEE FOR THE ESTATE OF ISAAC
KODSI,

      Plaintiff,

v.

ARK CAPITAL GROUP, LLC, AMY
KODSI, AND NANCY KODSI,

      Defendants.

_____/

**TRUSTEE'S COMPLAINT FOR DECLARATORY  JUDGMENT TO DETERMINE
DEBTOR'S OWNERSHIP IN ARK CAPITAL GROUP, LLC, ALTER EGO,
TURNOVER, CONSTRUCTIVE TRUST, INJUNCTION, CONSPIRACY TO
COMMIT FRAUD, SUBSTANTIVE CONSOLIDATION, UNJUST ENRICHMENT,
<u>AND FRAUDULENT TRANSFERS</u>**

Barry E. Mukamal, the Chapter 7 Trustee (the ***"Trustee"***) for the bankruptcy estate of

Isaac Kodsi (the ***"Debtor"***), by and through his undersigned counsel, sues Defendants Ark

Capital Group, LLC (***"Ark Capital"***), Amy Kodsi (***"Mother"***), and Nancy Kodsi (***"Sister"***) (Ark

Capital, Mother, and Sister shall be referred to collectively as the

"***Defendants***"), and states as follows:

**I.      NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE**

      **A.  Nature of Action**

1.      This adversary proceeding is brought by the Trustee against the Defendants to determine the Debtor's ownership in Ark Capital, for the issuance of an injunction against Ark Capital, and for the recovery of fraudulent transfers against the Debtor's Mother.

2.      Since at least 2005, the Debtor (an attorney licensed by the Florida Bar since 1993) has operated and commingled his business and personal affairs through a vast web of companies, including his law firm.  When lawsuits began being filed against the Debtor in 2008 by investors and lending institutions, the Debtor implemented a complex asset protection scheme in order to keep his assets out of the reach of his creditors – which until now has proven successful, and ultimately led his creditors to file an involuntary bankruptcy again him.  Some examples of such planning are: the Debtor stopped depositing monies into his personal account and began depositing monies into a newly created account with his wife, and at times used an account only in his wife's name; on at least one occasion used a straw person to complete a commercial note purchase for the benefit of the borrower on the note; deposited over $2,100,000 in personal tax refunds between 2009 and 2010 into a trust account in the name of his old law firm; set up companies in family members names to purchase pools of distressed loans, and then accessed the companies bank accounts for his personal benefit; and, has failed to file tax returns since 2011, despite maintaining over $500,000 in yearly expenses since 2011.

3.      As will be explained in this Complaint, Ark Capital was a company owned by the Debtor before 2009, but according to the Debtor, was allegedly transferred to his Mother and Sister in 2009 because his Mother and Sister wanted to start investing their monies.  Neither the Debtor, Ark Capital, Mother, nor Sister have produced any corporate documentation evidencing the transfer of ownership, and at all times Ark Capital has been controlled by the Debtor.  Upon

information and belief, and based on the Debtor's Rule 2004 testimony and the Trustee's review

of public records, Ark Capital owns a number of residential loans and at least one property.

### B.  Parties

4.      The Trustee is the duly authorized and acting Chapter 7 Trustee of the Debtor's

estate created pursuant to Section 541 of the Bankruptcy Code.

5.      Ark Capital is a Florida limited liability company with its principal place of

business in Broward County, Florida.

6.      Mother is *sui juris*, over the eighteen years of age, and a resident of Palm Beach

County, Florida.

7.      Sister is *sui juris*, over the eighteen years of age, and a resident of Broward

County, Florida.

### C.  Jurisdiction and Venue

8.      This Court has jurisdiction over the subject matter of this action pursuant to 11

U.S.C § 105, and 28 U.S.C. §§ 157(a) and (b) and 1334(b).

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

10.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.      GENERAL ALLEGATIONS

### A.  Procedural Background

11.      On December 20, 2013 (the **"Petition Date"**), this case was commenced by the

filing of an involuntary petition for relief under the Bankruptcy Code by petitioning creditors:

LAE NYY, LLC; Russell Pergament, and First Southern Bank (the "**Main Case**").   The

petitioning creditors alone hold over $11,000,000 in liquidated claims against the Debtor.

12.     On March 28, 2014, the Debtor consented to an order for relief and the Court entered the Order for Relief in Involuntary Case and Order Setting Deadline for Filing Schedules, Statements and Other Documents (the "***Order for Relief***"). *See* Main Case ECF No. 28.

13.     On April 1, 2014, the Trustee was appointed as the duly authorized and acting Trustee of the Debtor's bankruptcy estate.  *See* Main Case ECF No. 32.

14.     On May 23, 2014, the Trustee served Ark Capital with a Rule 2004 notice (the "***Ark Capital Notice***") requesting the production of certain documents.  Attached as **Exhibit A** is a copy of the Ark Capital Notice.

15.     Per www.sunbiz.org, Ark Capital's manager is the Debtor, and its registered agent is the Kodsi Law Firm, P.A.

16.     Because Ark Capital failed to respond to the Ark Capital Notice, the Trustee filed his Omnibus Motion to Compel Production of Documents Pursuant to Rule 2004 and for Sanctions (the "***Motion to Compel***").  *See* Main Case ECF No. 182.

17.     On September 5, 2014, and after notice and a hearing, the Court entered its Order Granting the Trustee's Motion to Compel (the "***Order***"), which Ark Capital has failed to comply with because it has not responded or produced any documents responsive to the Ark Capital Notice.  *See* Main Case ECF No. 258.

18.     Accordingly, the Trustee does not know all the assets that Ark Capital owns today.

**B.  The Debtor's Factual Background**

19.     The Debtor is an attorney licensed by the Florida Bar who received his law degree from St. Thomas University in 1993.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

20.    Initially, the Debtor was law partners with Neil Eisenstein at Kodsi & Eisenstein, P.A., which firm was incorporated in April 1996.  For reasons unknown to the Trustee, Kodsi & Eisenstein, P.A., was administratively dissolved in October 2004.

21.    The Debtor and Neil Eisenstein also incorporated Kodsi, Eisenstein & Associates, P.A., in January 2002.  In October 2002, the firm name was changed to the Kodsi Law Firm, P.A. (*"KLF"*).  At that time, it is believed that Neil Eisenstein was no longer partners with the Debtor.  Soon thereafter, Steven Amster (*"Amster"*) became law partners with the Debtor in KLF, and the Debtor has represented to the Trustee that KLF is now owned 50/50 between the Debtor and Amster .

22.    Per the Florida Bar's website, Mr. Kodsi is listed as the managing partner of KLF.

23.    In 1998, the Debtor incorporated KIT Financial Services d/b/a Ark Financial Group ("*KIT*") in order for KIT to lend money to people in the property rehabbing business.

24.    Sometime in the early 2000's, the Debtor became involved in real estate deals and effectively stopped practicing law.  However, the Debtor maintained Kodsi, Eisenstein & Associates, P.A., and to this day KLF.

25.    Until approximately 2007, the Debtor enjoyed a profitable real estate market by virtue of the numerous properties he owned through various companies.  In addition, the Debtor through KIT raised millions of dollars from investors, which monies KIT mainly invested in real estate projects belonging to the Debtor, or lent to friends of the Debtor who were involved in the real estate business.

26.    In order to raise money from an investor, KIT would typically issue the investor a promissory note, which promissory note the Debtor personally guaranteed.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

27.     The Debtor has testified that at times he used new investor monies in KIT to repay old investors.

28.     Through 2008, the Debtor lived an extravagant and lavish lifestyle.

29.     In mid-2008, and due to the real estate collapse, the Debtor's businesses began to suffer financial difficulties, and at least through KIT, the Debtor was not able to raise monies from additional investors.

30.     As a result, the Debtor sent a letter to most (if not all) of KIT's investors in September 2008 advising them that the monthly interest payments (sometimes as high as 15%) they were accustomed to receiving would be stopping due to "significant external factors" and that the Debtor was "actively working through the issues at the current time to reach resolutions."  A copy of the September 2008 letter is attached as **Exhibit B**.

31.     As a result of the "financial difficulties" suffered by the Debtor's businesses, numerous lawsuits were filed against the Debtor.  For example:

-   On June 10, 2008, the Debtor was sued by Compass Bank for breach of a personal guaranty, which ultimately resulted in a judgment against the Debtor for $3,960,994.64 on December 16, 2009;

-   On May 5, 2009, the Debtor was sued by a group of individuals who purchased properties in a real estate development owned by the Debtor known as Villa Francine, for among other things, negligent misrepresentation and deceptive and unfair trade practices;

-   On August 10, 2009, the Debtor was sued by LAE NYY, LLC, regarding a failed real estate project, which ultimately resulted in a judgment against the Debtor for $7,233,712.47 on April 26, 2010;

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

- On August 27, 2009, the Debtor was sued by GEM Resources, LLC, regarding a failed real estate project known as Cypress Bay;

- On November 20, 2009, the Debtor was sued by Frank Perrone, an investor in a real estate project owned by the Debtor known as the "Oakland Park Project," for among other things, negligent misrepresentation, fraudulent inducement, Florida Securities Registration Violation, Florida Securities Fraud and Fraudulent Inducement;

- On January 29, 2010, the Debtor was sued by Hillcrest Bank for breach of a personal guaranty, which lawsuit ultimately resulted in a judgment against the Debtor for $11,344,198.99 on November 18, 2010;

- On November 5, 2010, the Debtor was sued by Susan Giveon, an investor in KIT, for among other things, breach of fiduciary duty, fraud, and civil theft, which ultimately resulted in a judgment being entered against the Debtor in the amount of $1,230,469.16 on November 15, 2011;

- On December 22, 2010, the Debtor was sued by the John D. Cavo Revocable Trust, another investor in the real estate project owned by the Debtor known as the "Oakland Park Project," for among other things, negligent misrepresentation, fraudulent inducement, Florida Securities Registration Violation, Florida Securities Fraud and Fraudulent Inducement; and

- On September 13, 2011, the Debtor was sued by Jason Brady, an investor in KIT, for among other things, fraud (which included an allegation that the Debtor operated a Ponzi scheme through KIT).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

32.     Despite such lawsuits and numerous investors losing the money they had invested with the Debtor or his companies (some of which lost the majority of their life savings), which the Debtor personally guaranteed, the Debtor continued to lead an extravagant and lavish lifestyle.

33.     For example, in April 2008, the Debtor took out a $6,475,000 loan with Northern Trust Bank (the "*NT Loan*") to refinance the existing $3,160,000 loan on his home on North Bay Road, and spent approximately $3,000,000 of the NT Loan to build an addition and renovate his home.  Further, the Debtor purchased a Bentley Coupe in 2008 and continued to pay the expensive private school tuitions for his children.

34.     Since 2009, the Debtor's monthly expenses have totaled approximately $50,000, which expenses he has continued to pay through today despite the numerous judgments entered against him and the monies he owes investors.

35.     The Debtor has testified that since 2011 the majority of funds he has received to maintain his approximate $50,000 of expenses per month comes from ALS Management Solutions, LLC ("*ALS Management*") or his parents.

36.     ALS Management was incorporated on December 7, 2011, which was one month before a charging order was entered against Ark Loan Solutions, LLC, Estancia Palm Springs, LLC, Ark Development/Oceanview, LLC, and Ark Capital (collectively, the "*Charging Order Entities*") in the state court action styled *Compass Bank v. Cypress Bay Development, LLC, Isaac Kodsi, et al*. (the "*Compass Bank Case*").  A copy of the Charging Order is attached as **Exhibit C**.  The Charging Order was entered against the Charging Order Entities because the Debtor had apparently been taking monies directly out of the Charging Order Entities to use for personal expenses despite the judgments he had against him.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

37.     Prior to the Debtor's 341 meeting in this case, the Debtor had consistently testified in depositions in aid of execution that that he did not know who owned ALS Management, despite the fact he was receiving approximately $50,000 per month from it and that it operated out of the Debtor's office.

38.     At the 341 meeting of creditors, the Debtor (for the first time) stated that ALS Management was owned by the Joseph Kodsi Family Trust and the BK Family Trust.

39.     Joseph Kodsi is the Debtor's father and Mother's husband.  The "BK" in the BK Family Trust stands for Bruria Kodsi, who is the Debtor's sister-in-law.

40.     The Debtor is the trustee of the Joe Kodsi Family Trust.

41.     Since the end of 2011, it has been the Debtor who has received the majority of monies from ALS Management.  Specifically, it does not appear that either of ALS Management's alleged owners, the Joseph Kodsi Family Trust and the BK Family Trust, have received any monies from ALS Management.

42.     ALS Management "manages" numerous affiliated entities, all of which begin with "ALS," such as ALS I, LLC, ALS II, LLC, etc (the "*ALS Entities*").  The ALS stands for Ark Loan Solutions.

43.     The business of the ALS Entities is similar to the business of Ark Capital, that is, purchasing loans and REO properties.

44.     All of the above-mentioned entities, specifically ALS Management, the ALS Entities, Ark Capital, and KLF, operate out of the same office.

45.     Notably, the Debtor has not filed tax returns since 2011 despite receiving anywhere from $500,000 to $700,000 per year since 2011.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### C. Ark Capital

46.     Ark Capital was incorporated on December 6, 2005, and it was originally owned by Peter Tocci ("**P. Tocci**") and the Debtor.

47.     The Debtor has testified in pre-petition state court actions that P. Tocci transferred his interest in Ark Capital to the Debtor in 2009.

48.     On July 8, 2011, Peter Tocci filed a Chapter 7 voluntary petition in Bankruptcy Court for the Southern District of Florida – Case No. 11-29124-JKO.

49.     P. Tocci did not schedule an interest in Ark Capital in his bankruptcy schedules. However, P. Tocci stated in item 18.a. of his Schedule of Financial Affairs that he held an interest in Ark Capital through April 2009 – which corroborates the Debtor's statement that P. Tocci had transferred his interest in Ark Capital to the Debtor in 2009 thereby making the Debtor its 100% owner.

50.     Still in 2009, but after P. Tocci's transfer of his interest in Ark Capital to the Debtor, the Debtor further testified in pre-petition state court actions that he had transferred his 100% interest in Ark Capital to Mother and Sister (the "**Transfer**").

51.     Neither the Debtor, Mother, Sister, nor Ark Capital have produced any documents evidencing the alleged Transfer of the Debtor's interest in Ark Capital to Mother and Sister.

52.     In the state court action styled *Compass Bank v. Cypress Bay Development, LLC, et al.*, the Debtor testified on December 1, 2011:

- the reason he made the Transfer of his 100% interest in Ark Capital to Mother and Sister in 2009 was because he "wanted to start buying mortgages and the only people that had any money was my mother.  So I gave her the company and she put the money in,

and then I went out now and got more people to put more money in Ark Capital to go buy more mortgages;"

- Mother and Sister had capitalized Ark Capital with $200,000 to $300,000; and

- at the time of the Transfer in 2009, Ark Capital had no assets and was a dormant company.

53.    Since 2009 through today, the true owner of Ark Capital has been the Debtor and not Mother and Sister.

54.    At no time has Mother or Sister worked at Ark Capital, or provided it with any services.

55.    Neither Mother, Sister, Ark Capital, nor the Debtor have produced any documents evidencing Mother's and Sister's $200,000 - $300,000 capitalization of Ark Capital.

### D.  The Debtor Commingles His Assets with Ark Capital

56.    From a review of Ark Capital's bank account records at BB&T and Bank United (Ark Capital banked at BB&T from at least May 31, 2007 through June 29, 2011, and has since banked with Bank United)(the "***Ark Capital Accounts***"), Mother and Sister collectively and allegedly have only deposited $87,000 – which was via a check on December 16, 2010 (the "***87k Check***"), and Mother has received $170,156 in transfers from Ark Capital.  A copy of the 87K Check is attached as **Exhibit D**.

57.    At all material times, the Debtor has controlled Ark Capital and been the person responsible for purchasing loans, administering its REO's, controlling its bank accounts, and making its business decisions.  In fact, the Debtor has testified that Mother and Sister "really don't know much about the business" of Ark Capital.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

58.     In addition, the Debtor has always had signature authority over the Ark Capital Accounts, and has used the Ark Capital Accounts to transfer money to himself, his wife, or companies owned or controlled by him for the payment of his personal and business expenses. Such expenses include car payments for his spouse and payments of the Debtor's American Express bill.

59.     For example, there are numerous transfers into and out of the Ark Capital Accounts from entities owned by the Debtor, such as KIT, IMG Investments, LLC ("*IMG*"), Back Bay Isle, LLC, Royal Palm Miami Downtown, LLC, and Pier Point Advisors, LLC (which the Debtor owned through a straw-person).

60.     Specifically, regarding the Ark Capital Accounts, between May 31, 2007 and April 4, 2104:

- KIT deposited at least $348,544.72 and has withdrawn at least $195,919.62;

- Back Bay Isle, LLC has withdrawn at least $311,575.00;

- Isaac Kodsi has withdrawn at least $29,247.75;

- Tera Kodsi has deposited $24,116.49 and has withdrawn at least $57,000;

- Isaac Kodsi and Tera Kodsi, jointly, have withdrawn at least $105,000;

- IMG deposited at least $60,000;

- Pier Point deposited at least $45,000;

- Royal Palm Miami Downtown, LLC, has withdrawn at least $275,000; and

- Tanner Investment and Consulting Services, Inc. ("*TIC*"), has deposited at least $185,000.[1]

---

[1] TCI is allegedly owned by Sean Tanner, who is the Debtor's brother-in-law (he is married to Sister).  At all times, the Debtor has been a signatory on the bank account for TCI, and has used the account to deposit and withdraw monies belonging to the Debtor.  Moreover, Sean Tanner was the straw-person used by the Debtor regarding Pier Point Advisors, LLC.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

61.     Upon information and belief, the Debtor used some of the above monies that were deposited into the Ark Capital Accounts to purchase additional assets in Ark Capital, or to service some of Ark Capital's debts.

62.     Moreover, on September 1, 2010, KIT (which is wholly owned by the Debtor) assigned to Ark Capital (via an Assignment of Mortgage) a note and mortgage owned by KIT (securing $201,500 of principal) for the sum of $10.  A copy of the Assignment of Mortgage is attached as **Exhibit E**.

### E.  Mother

63.     On August 21, 2014, the Trustee took the Rule 2004 examination of Mother (the "***Mother Exam***").

64.     Mother testified that she did not know what assets Ark Capital owned.  Mother further testified that she had owned Ark Capital since its inception, but did not know when Ark Capital was formed.

65.     Moreover, Mother testified she has no knowledge regarding the Debtor's use of the Ark Capital Accounts, who has signature authority on those accounts, or where Ark Capital banks.

66.     Prior to the Mother Exam, and pursuant to a *duces tecum* request in the Rule 2004 examination notice, Mother produced a limited number of documents (the "***Mother Documents***").  Mother testified that she did not know who had put the Mother Documents together, but believed it could have been Amster or Paul Gottfried (another attorney who has worked out of the KLF office for many years).

67.     As part of the Mother Documents, Mother produced a promissory note dated October 1, 2010 given to her by Ark Capital.  The note was in the amount of $65,000, had an

interest rate of 10%, and was set to mature on October 1, 2012 (the "**65K Note**").  The 65K Note was signed by the Debtor as manager of Ark Capital.

68.      In addition, the 65KNote was secured by a Mortgage and Security Agreement dated October 1, 2010, and it was executed by the Debtor as manager of Ark Capital (the "**Mortgage**").

69.      The property listed in the Mortgage securing the repayment of the 65K Note had been owned by Ark Capital since August 17, 2009, which is more than a year before Mother received the Note from Ark Capital.

70.      The bank account records for Ark Capital do not reflect a deposit of the funds from the $65K Note.

71.      As part of the Mother Documents, Mother further produced a promissory note dated December 16, 2010 given to her by Ark Capital.  The note was in the amount of $87,000, had an interest rate of 10%, and was set to mature on January 1, 2013 (the "**87K Note**").  The 87K Note was signed by the Debtor as manager of Ark Capital.

72.      Upon information and belief, the 87K Check (see paragraph 57) funded the 87K Note.

73.      As part of the Mother Documents, Mother further produced a Partial Collateral Assignment of Mortgage as Security dated January 3, 2011 (the "**Partial Assignment**").  The Partial Assignment provides as security/collateral for an alleged $92,000 note from Mother to Ark Capital (the "**92k Note**") another note and mortgage owned by Ark Capital in the amount of $162,400.

74.      The 92K Note has not been produced by either Ark Capital or Mother.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

75.     The bank account records for Ark Capital do not reflect a deposit of the funds from the $92K Note.

76.     At all material times, Mother has been at most an alleged lender to Ark Capital up to the amount of the $87K Check, which amount has been repaid by Ark Capital.

77.     Mother is not an owner of Ark Capital, nor has she ever held an ownership interest in Ark Capital.

78.     Mother actively participated and assisted the Debtor in a scheme to shield his interest in Ark Capital from his creditors and the Trustee by agreeing to act as a straw-owner of Ark Capital for the benefit of the Debtor.

**F.  Nancy Kodsi**

79.     On September 16, 2014, the Trustee took the Rule 2004 examination of Sister (the "***Sister Exam***"), which examination notice included a *duces tecum* request.

80.     Sister testified that she did not have any documents in her possession, custody, or control responsive to the *duces tecum* request, and that the Sister Exam was not important to her.

81.     The 87K Check was written from an account at Bank of America in the name of Sister and Mother (the "***BOA Account***").

82.     At the Sister Exam, Sister initially testified that:

        - the BOA Account belonged to her and not Mother;

        -that her Mother would at times deposit money in the BOA Account to refund monies that Sister used to purchase nominal items for her Mother;

        - and, that Mother did not use the BOA Account.

83.     In addition, Sister testified that she did not know what Ark Capital was or who owned it.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

84.     After being presented with the 87K Check, Sister testified that she had never seen it and was not aware that it had been written from her alleged BOA Account.

85.     Sister further testified that she did not know if Ark Capital had ever issued her any K-1's, or if any K-1's for Ark Capital were filed along with her tax returns.

86.     Sister is not an owner of Ark Capital, nor has she ever held an ownership interest in Ark Capital.

### G.  The Ark Capital Tax Returns

87.     Ark Capital has not produced any tax returns.

88.     The only tax return for Ark Capital in the Trustee's possession is its 2009 tax return (the "*2009 Ark Capital Return*"), which was produced via a subpoena served by the Trustee on the accounting firm of Haft, Steinlauf & Co.  A copy of Ark Capital's 2009 tax return is attached as **Exhibit F**.

89.     The 2009 Ark Capital Return is unsigned, but is stamped with the wording "Client Copy."

90.     Contrary to the Debtor's sworn testimony that Ark Capital was a dormant company in 2009, the 2009 Ark Capital Return lists Ark Capital as having $768,714 in total assets at the beginning of 2009, and total assets of $767,655 at the end of 2009.

91.     In addition, the 2009 Ark Capital Return has attached to it K-1's for the Debtor and P. Tocci.

92.     Despite the K-1's attached to the 2009 Ark Capital Return, the Debtor produced to the Trustee alleged K-1's for the years 2009 and 2010 for Mother and Sister.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

93.    Neither Mother nor Sister produced K-1's to the Trustee issued to either of them by Ark Capital, nor did they recognize the K-1's in their names for Ark Capital produced to the Trustee by the Debtor.

**H.  Ark Capital's Assets Known to the Trustee**

94.    As of the filing of this Complaint, the Trustee is only aware of the following mortgages (the "***Mortgages***") owned by Ark Capital:

a.    A mortgage in Pinellas County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 17232 Page 1583 in the Pinellas County Public Records;

b.    A mortgage in Pinellas County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 17241  Page 1020 in the Pinellas County Public Records;

c.    A mortgage in St. Lucie County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 3283 Page 2830 in the St. Lucie County Public Records;

d.    A mortgage in Duval County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 15568 Page 2064 in the Duval County Public Records;

e.    A mortgage in Flagler County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 1795 Page 0264 in the Flagler County Public Records;

f.    A mortgage in Polk County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 08262 Page 1405 in the Polk County Public Records;

g.    A mortgage in Broward County, Florida, which mortgage is recorded at OR Book 51129 Page 1250 in the Broward County Public Records; and

h.    A mortgage in Broward County, Florida, which assignment of mortgage to Ark Capital is recorded at OR Book 47390 Page 1919 in the Broward County Public Records.

95.    In addition, Ark Capital is the owner of a residential property (the "***Property***") in Volusia County, Florida, with the following legal description:

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Lot 19, Block 281, Deltona Lakes Unit Seven, as per Plat Thereof, Recorded in Plat Book 25, Pages 149 through 162, of the Public Records of Volusia County, Florida.

## COUNT I
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
### (Declaration Against all Defendants that Ark Capital is Owned by the Debtor)

96.     The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

97.     There exists an actual controversy with respect to the true owner(s) of Ark Capital and a need for a declaration as to whether the Debtor is the true owner of Ark Capital.

98.     The Trustee, on behalf of the bankruptcy estate of the Debtor, has suffered actual injury as a result of the Debtor's alleged transfer of his interest in Ark Capital to Mother and Sister, which injury can be redressed by a finding that Ark Capital is owned by the Debtor.

99.     The Debtor allegedly transferred Ark Capital to Mother and Sister (ie. the Transfer) at a time when numerous lawsuits had been (or where about to be) filed against him personally.

100.     Neither Mother, Sister, nor Ark Capital have produced any documentation evidencing the alleged Transfer of the Debtor's interest in Ark Capital to Mother and Sister.

101.     At all material times, the Debtor has exercised complete dominion and control of Ark Capital.

102.     The Debtor has always had signature authority over the Ark Capital Accounts.

103.     The Debtor, his spouse, and companies owned by the Debtor have commingled funds in the Ark Capital Account.

104.     The Debtor has disregarded the corporate formalities of Ark Capital.

105.     Mother testified that she did not know what assets Ark Capital owned.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

106.    Sister testified that she had never heard of Ark Capital.

107.    A declaration that Ark Capital is owned by the Debtor is necessary to prevent injustice in this case.

**WHEREFORE,** the Trustee respectfully requests the Court to enter a declaratory judgment in favor of the Trustee and against the Defendants:

A.    Determining that Ark Capital is wholly owned by the Debtor;

B.    Awarding the Trustee's attorneys' fees and costs to the extent permitted by applicable law; and

C.    Granting any and all further relief this Court deems fair and equitable.

## COUNT II
## ALTER EGO
### *(Against all Defendants)*

108.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

109.    The Debtor allegedly, and if true, fraudulently, transferred Ark Capital to Mother and Sister (ie. the Transfer) at a time when numerous lawsuits had been (or where about to be) filed against him personally.

110.    Neither Mother, Sister, nor Ark Capital have produced any documentation evidencing the alleged Transfer of the Debtor's interest in Ark Capital to Mother and Sister.

111.     At all material times, the Debtor has exercised complete dominion and control of Ark Capital.

112.    Neither Mother nor Sister have ever controlled or provided services to Ark Capital.

113.    The Debtor has always had signature authority over the Ark Capital Accounts.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

114.    The Debtor, his spouse, and companies owned by the Debtor have commingled funds in the Ark Capital Account.

115.    The Debtor has disregarded the corporate formalities of Ark Capital.

116.    The Debtor improperly and fraudulently transferred Ark Capital to Mother and Sister in order to shield his assets from his creditors.

117.    The Debtor used the corporate form of Ark Capital for a fraudulent and improper purpose.

118.    Mother testified that she did not know what assets Ark Capital owned.

119.    Sister testified that she had never heard of Ark Capital.

120.    Ark Capital is a mere instrumentality of the Debtor used by him to shield his assets from his creditors.

121.    As a result, the Trustee has suffered damages.

**WHEREFORE,** the Trustee respectfully requests the Court to enter a declaratory judgment in favor of the Trustee and against the Defendants:

A.    Determining that Ark Capital is the alter-ego of the Debtor;

B.    Awarding the Trustee's attorneys' fees and costs to the extent permitted by applicable law; and

C.    Granting any and all further relief this Court deems fair and equitable.

### COUNT III
### TURNOVER PURSUANT TO 11 U.S.C. § 542
#### *(Against all Defendants)*

122.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

123.     Pursuant to 11 U.S.C. § 541, Ark Capital is property of the Debtor's bankruptcy estate and must be turned over to the Trustee.  If necessary, Mother and Sister must turn over their membership interests in Ark Capital to the Trustee.

124.     Pursuant to 11 U.S.C. § 541, any and all interest payments from loans owned by Ark Capital, or sale proceeds from the sale of any of properties owned by Ark Capital, are property of the Debtor's bankruptcy estate and must be turned over to the Trustee.

125.     Pursuant to 11 U.S.C. § 541, any and all books and records, assets, and electronic equipment owned by Ark Capital is property of the Debtor's bankruptcy estate and must be turned over to the Trustee.

**WHEREFORE,** the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against the Defendants directing the Defendants to:

A.     Turn over Ark Capital to the Trustee, as well as all payments from mortgages owned by Ark Capital, or sale proceeds from the sale of any of properties owned by Ark Capital, and all of Ark Capital's assets, books and records, and, electronic equipment;

B.     Awarding the Trustee's attorneys' fees and costs to the extent permitted by applicable law; and

C.     Granting any and all further relief this Court deems fair and equitable.

**COUNT IV**
**CONSTRUCTIVE TRUST**
*(Against Mother and Sister)*

126.     The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

127.    As set forth above, the Debtor allegedly transferred his 100% interest in Ark Capital to Mother and Sister.

128.    In order to restore Ark Capital to its rightful owner, and to prevent the unjust enrichment of the Debtor, Mother, and/or Sister, with property of the estate, it is necessary for the Court to impose a constructive trust in favor of the Trustee and the Debtor's estate over Ark Capital.

129.    It would be against equity for either Mother and/or Sister to retain any of their alleged respective interests in Ark Capital because such interests were obtained by fraud or other questionable means.

130.    Ark Capital is readily identifiable by the Court.

131.    As a result, the Trustee has damages.

**WHEREFORE,** the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against the Defendants directing the Defendants to:

A.    Turn over Ark Capital to the Trustee, as well as all payments from mortgages owned by Ark Capital, or sale proceeds from the sale of any of properties owned by Ark Capital, and all of Ark Capital's assets, books and records, and, electronic equipment;

B.    Awarding the Trustee's attorneys' fees and costs to the extent permitted by applicable law; and

C.    Granting any and all further relief this Court deems fair and equitable.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## COUNT V
## <u>INJUNCTION AND OTHER EQUITABLE RELIEF</u>
### *(Against All Defendants)*

132.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

133.    An injunction is necessary in order to prevent Ark Capital, Mother, of Sister from dissipating, secreting or transferring the assets of Ark Capital to the detriment of the Debtor's creditors and this bankruptcy estate.

134.    An injunction is further necessary in order to prevent Ark Capital, Mother, or Sister from destroying the books and records of Ark Capital.

135.    There is a substantial likelihood that the Trustee will prove that Ark Capital is either: owned by the Debtor; the Debtor's alter ego; or, is property of the estate.

136.    Unless the Court issues an injunction or some other form of equitable relief to stop Ark Capital (which is controlled by the Debtor) from dissipating or secreting the assets of Ark Capital (such as the Mortgages and Property), as well as destroying Ark Capital's book and records, the Trustee on behalf of the Debtor's estate and his creditors will suffer irreparable harm and will have no adequate remedy at law to recover the assets of Ark Capital.

137.    The threatened injury to the Trustee on behalf of the Debtor's bankruptcy estate and his creditors outweighs any threatened harm an injunction may cause Ark Capital, Mother, or Sister.

138.    An injunction would serve the public interest because it will to dissuade Ark Capital, Mother, and Sister from fraudulently transferring and secreting Ark Capital's assets to avoid payment of the Debtor's creditors, while at the same time enjoying the benefits of Ark Capital's assets.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

139.    In the alternative, an attachment on all interest payments from loans owned by Ark Capital, or sale proceeds from the sale of any of properties owned by Ark Capital, is appropriate pursuant to *Fla. Stat.* § 76.04 or *Fla. Stat.* § 76.05 because the debt to the Trustee is due, or the debt to the Trustee is not yet due, and Ark Capital (which is controlled by the Debtor) will fraudulently dissipate or secret the assets of Ark Capital before a judgment can be obtained by the Trustee.

140.    In the past, companies controlled by the Debtor have fraudulently disposed of, and secreted, property to avoid the payment of his debts.

**WHEREFORE**, the Trustee respectfully requests that a temporary injunction, or some other form of equitable relief, be granted to stop Ark Capital, Mother, and Sister from dissipating or secreting any assets of Ark Capital, as well as destroying the books and records of Ark Capital, and any further relief that this Court deems just, fair and equitable.

## COUNT VI
## CIVIL CONSPIRACY TO COMMIT FRAUD
### *(Against Mother)*

141.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

142.    There was an agreement reached by the Debtor and Mother wherein Mother (and allegedly Sister) would hold the Debtor's ownership interest in Ark Capital in order to shield Ark Capital from the Debtor's creditors, and hold herself out as the owner of Ark Capital (the "***Agreement***").

143.    The Agreement was for the purpose of doing an unlawful act or doing a lawful act by unlawful means, namely, to shield Ark Capital and its assets from the Debtor's creditors.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

144.    Mother has performed an overt act in furtherance of the conspiracy when she testified at her Mother Exam that she was the owner of Ark Capital, despite failing to produce any documents evidencing her ownership or having any material knowledge of the business of Ark Capital.

145.    Sister is not named in this count because she has never even heard of Ark Capital.[2]

146.    Accordingly, the Trustee on behalf of the Debtor's estate has suffered damages as a result of the Agreement reached between the Debtor and Mother under the conspiracy.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against Mother in the amount of the value of Ark Capital as of today, in the amount of the value of all assets of Ark Capital that have been sold or transferred while Mother has been an alleged owner of Ark Capital, for any and all monies Mother has received from Ark Capital, and any further relief that this Court deems just, fair and equitable.

## COUNT VII
## <u>SUBSTANTIVE CONSOLIDATION</u>
### *(Against Ark Capital)*

147.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

148.    As evidenced by the commingling of funds between Ark Capital, the Debtor, and entities owned or controlled by the Debtor, as well as the Debtor's dominion and control of Ark Capital, there is a substantial identity between Ark Capital and the Debtor.

149.    In the instant case, consolidation of Ark Capital with the Debtor is necessary to avoid some harm or to realize some benefit.

---

[2] In the event Sister claims an ownership interest in Ark Capital, this count will be amended to include Sister.

150.     The following facts favor the substantive consolidation of Ark Capital into the Debtor's bankruptcy estate:

- There is a degree of difficulty in segregating and ascertaining the individual assets and liabilities of the Debtor and Ark Capital;

- The Debtor has commingled the assets of Ark Capital with himself and companies either owned or controlled by him;

- There is a unity of interest in Ark Capital given that the Debtor previously owned Ark Capital and has commingled its assets with his assets and the assets of companies either owned or controlled by him; and

- The Debtor has transferred assets of Ark Capital (ie. money) without formal observance of corporate formalities.

151.     Specifically, the finances of the Debtor with Ark Capital are so intermingled that administration of the Debtor's bankruptcy estate without Ark Capital would leave creditors of the Debtor without assets and avoidance actions that the Debtor's creditors could use to satisfy debts owed to them.

152.     Pursuant to 11 U.S.C. § 105, this Court has the power to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Title 11.

153.     Given the identity of interest between the Debtor and Ark Capital, it is necessary and appropriate that business affairs of Ark Capital be administered and resolved in conjunction with the affairs of the Debtor in his bankruptcy case.

154.     Substantive consolidation is necessary to insure the equitable treatment of all creditors, in that the creditors of the Debtor will receive a smaller share of assets if Ark Capital is not brought into these proceedings, allowing the Debtor to shield assets through Ark Capital.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**WHEREFORE**, the Trustee respectfully requests the Court to enter judgment on his behalf and against Ark Capital as follows:

A.  Declaring that at all material times Ark Capital was an alter ego of the Debtor;

B.  Substantively consolidating Ark Capital into the Debtor's bankruptcy estate; and

C.  Granting any and all further relief that this Court deems just, fair and equitable.

## COUNT VIII
## UNJUST ENRICHMENT
### *(Against Mother and Sister)*

155.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

156.    By transferring Ark Capital to Mother and Sister, the Debtor conferred a benefit on Mother and Sister, each of which having knowledge thereof.

157.    Both Mother and Sister voluntarily accepted and retained the benefit conferred on them.

158.    The circumstances are such that it would be inequitable for Mother and Sister to retain the benefit of the Debtor's transfer of Ark Capital to them without Mother and Sister paying the value thereof.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against Mother and Sister, jointly and severally, in the amount of the value of Ark Capital as of today, as well as separate judgments for any and all monies either have received from Ark Capital, and any further relief that this Court deems just, fair and equitable.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## COUNT IX
## FRAUDULENT TRANSFER
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(b) and 726.108
### *(Against Mother)*

159.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

160.    Between March 2, 2011 and February 5, 2014, Ark Capital transferred $170,155.94 to Mother from the Ark Capital Accounts (the "***Mother 726 Transfers***").

161.    If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the Mother 726 Transfers constitute a transfer of an interest in property of the Debtor.

162.    The Mother 726 Transfers were made within four (4) years of the Petition Date.

163.    The Mother 726 Transfers were made by Ark Capital and/or the Debtor without receiving reasonably equivalent value in exchange for such transfers.

164.    The Debtor's net assets were unreasonably small in relation to the A. 726 Kodsi Transfers.

165.    At the time of the Mother 726 Transfers, the Debtor was insolvent and would not be able to satisfy his liabilities as they came due.

166.    At the time of the Mother 726 Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

167.    At the time of the Mother 726 Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

168.    At all times, the Debtor exercised dominion and control over the funds in the Ark Capital Accounts.

169.    Prior to the Mother 726 Transfers, there existed a general unsecured creditor of the Debtor that could have avoided such transfers.

170.    Accordingly, the Mother 726 Transfers may be avoided pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(b) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the Mother 726 Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

<div align="center">

**COUNT X**
**FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(a) and 726.108**
***(Against Mother)***

</div>

171.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

172.    If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the A. Kodsi 726 Transfers constituted a transfer of an interest in property of the Debtor.

173.    The Mother 726 Transfers were made within four (4) years of the Petition Date.

174.    The Debtor made the Mother 726 Transfers with the actual intent to hinder, delay, and defraud creditors of the Debtor.

175.    The Mother 726 Transfers were made to an insider of the Debtor, namely, the Debtor's mother.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

176.    Before the Mother 726 Transfers were made, the Debtor had been sued or threatened with suit.

177.    At all times, the Debtor exercised dominion and control over the funds in the Ark Capital Accounts.

178.    Prior to the Mother 726 Transfers, there existed a general unsecured creditor of the Debtor that could have avoided such transfers.

179.    Accordingly, the Mother 726 Transfers may be avoided pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(a) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the Mother 726 Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

<div align="center">

**COUNT XI**
**FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.106(1) and 726.108**
*(Against Mother)*

</div>

180.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

181.    If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the Mother 726 Transfers constituted a transfer of an interest in property of the Debtor.

182.    The Mother 726 Transfers were made within four (4) years of the Petition Date.

183.    The Mother 726 Transfers were made by the Debtor without receiving reasonably equivalent value in exchange for such transfers.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

184.    The Debtor's net assets were unreasonably small in relation to the Mother 726 Transfers.

185.    At the time of the Mother 726 Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

186.    At all times, the Debtor exercised dominion and control over the funds in the Ark Capital Accounts.

187.    Prior to the Mother 726 Transfers, there existed a general unsecured creditor of the Debtor that could have avoided such transfers.

188.    Accordingly, the Mother 726 Transfers may be avoided pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.106(1) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the A. 726 Kodsi Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

## COUNT XII
## FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(A) and 550
### *(Against Mother)*

189.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

190.    Between December 20, 2011 and the Petition Date, Ark Capital transferred $110,114.23 to Mother from the Ark Capital Accounts (the "***Mother 548 Transfers***").

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

191.    If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the Mother 548 Transfers constituted a transfer of an interest in property of the Debtor.

192.    The Debtor made the Mother 548 Transfers with the actual intent to hinder, delay, and defraud creditors of the Debtor.

193.    The Mother 548 Transfers were made to an insider of the Debtor, namely, the Debtor's mother.

194.    Before the Mother 548 Transfers were made, the Debtor had been sued or threatened with suit.

195.    At all times, the Debtor exercised dominion and control over the funds in the Ark Capital Accounts.

196.    Accordingly, the Mother 548 Transfers may be avoided pursuant to 11 U.S.C. §548(a)(1)(A), and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the Mother 548 Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Section 550, and any further relief that this Court deems just, fair and equitable.

### COUNT XIII
### FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(B) and 550
### *(Against Mother)*

197.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

198.     If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the Mother 548 Transfers constituted a transfer of an interest in property of the Debtor.

199.     The Mother 548 Transfers were made within two (2) years of the Petition Date.

200.     The Mother 548 Transfers were made without receiving reasonably equivalent value in exchange for such transfers.

201.     The Debtor's net assets were unreasonably small in relation to the Mother 548 Transfers.

202.     At the time of the Mother 548 Transfers, the Debtor was insolvent and would not be able to satisfy his liabilities as they came due.

203.     At the time of the Mother 548 Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

204.     At the time of the Mother 548 Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

205.     At all times, the Debtor exercised dominion and control over the funds in the Ark Capital Accounts.

206.     Accordingly, the Mother 548 Transfers may be avoided pursuant to 11 U.S.C. §548(a)(1)(B), and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the Mother 548 Transfers, together with prejudgment interest from

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

the date of such transfers, costs, all other relief set forth in Section 550, and any further relief that this Court deems just, fair and equitable.

## COUNT XIV
## FRAUDULENT TRANSFER
### 11 U.S.C. §§ 549 and 550
### *(Against Mother)*

207.    The Trustee reasserts the allegations contained in paragraphs 1 - 95 as if fully set forth herein.

208.    If Ark Capital is found to be either an alter ego of the Debtor, property of the estate, or if it is substantively consolidated with the Debtor's bankruptcy estate, then the Mother 548 Transfers constituted a transfer of an interest in property of the Debtor.

209.    On February 5, 2014, Ark Capital transferred $50,000 to Mother (the "***Mother 549 Transfer***").

210.    The Mother 549 Transfer occurred after the commencement of the Debtor's bankruptcy case and was not authorized under the Bankruptcy Code or this Court.

211.    Mother provided no value or services to the Debtor or Ark Capital in exchange for the Mother 549 Transfer between the Petition Date and the entry of the Order for Relief.

212.    Accordingly, the Mother 549 Transfers may be avoided pursuant to 11 U.S.C. §549, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Mother in the total amount of the Mother 549 Transfer, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Section 550, and any further relief that this Court deems just, fair and equitable.

Respectfully submitted,

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Fla. Bar No: 0592749
Dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ISAAC KODSI,

                                      Case No. 13-40134-LMI
                                       Chapter 7

      Debtor(s).

_____/

### NOTICE OF RULE 2004 EXAMINATION *DUCES TECUM*
### (Documents May Be Produced In Lieu of Appearance[1])

Barry E. Mukamal, the Chapter 7 Trustee (the *"Trustee"*) for the bankruptcy estate of ISAAC KODSI (the *"Debtor"*), by the undersigned attorney, will examine **the Records Custodian of Ark Capital Group, LLC**, under oath on **Monday, June 16, 2014 at 10:00 a.m.** at Meland Russin & Budwick, P.A., 200 S. Biscayne Blvd., Suite 3200, Miami, FL 33131. The examination may continue from day to day until completed. If the examinee receives this notice less than 14 days prior to the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time.

The examination is pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, and will be recorded by Ouellette Mauldin Court Reporters. The scope of the examination shall be as described in Bankruptcy Rule 2004.

Pursuant to Local Rule 2004-1 no order shall be necessary. [If the examination is of a witness other than the debtor, the Local Form "Subpoena for Rule 2004 Examination" is included with this notice.]

**X** Production: [The examinee or your representatives, must also bring with you to the examination the documents, electronically stored information, or objects described on the attached **Exhibit A** (or if the examination is of a witness other than the debtor, on the attached subpoena), and must permit inspection, copying, testing, or sampling of the materials.]

REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

---

[1] The Trustee expressly reserves the right to continue (or reschedule) the examination after review of the documents provided in lieu of appearance.

1

EXHIBIT A

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2014, the foregoing document was served via the

Court's Notice of Electronic Filing upon the Registered Users listed on the attached **Exhibit 1**.

<div style="margin-left: 50%">

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Fla. Bar No: 0592749
Dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for Trustee*

</div>

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## SERVICE LIST

**Electronic Mail Notice List**
The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

Becket and Lee LLP    notices@becket-lee.com
Robert P Frankel    robert@frankelpa.com
Daniel N Gonzalez    dgonzalez@melandrussin.com,
ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
Nathan G Mancuso    ngm@mancuso-law.com
Barry E Mukamal    bemtrustee@kapilamukamal.com, FL64@ecfcbis.com
Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
Zach B Shelomith    zshelomith@lslawfirm.net,
jleiderman@lslawfirm.net;apopowitz@lslawfirm.net;cderby@lslawfirm.net;dverde@lslawfirm.net

**EXHIBIT 1**

## EXHIBIT A

## INSTRUCTIONS

a.    All references to any Person (as defined below) includes his/her/its employees, agents, servants, subsidiaries, parent company, affiliated company and any other person or entity or Representative (as defined below) acting or purporting to act on behalf or under his/her control.

b.    As used herein, the singular shall include the plural, the plural shall include the singular, the past tense shall include the present and the present tense shall include the past, so as to bring into the scope of definitions and document requests all matters which by any other construction would fall outside their scope.

c.    These requests encompass all documents in the responding party's custody, possession or control, whether or not such documents were prepared by or for such responding party. Where knowledge, information or documents in the responding party's possession, custody or control are requested or inquired of, such request or inquiry includes knowledge, information or documents in the possession, custody or control of each of responding party's employees, agents, accountants, attorneys, auditors, representatives and any other individuals or entities from whom the responding party could obtain documents.

d.    If there is a claim that any privilege excuses production of any document or part thereof, the responding party must provide a log identifying each allegedly privileged document by title, type, date, author, recipients and subject matter, and state the privilege, and respond as fully as otherwise possible with all nonprivileged documents in whole or part.

e.    When producing the documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

f.    When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

g.    In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each subfile, if any, maintained within the file, and the present location of the file.

h.    If any document to be produced has been destroyed or is otherwise incapable of production, state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; and (d) if not destroyed, the reason why the document is incapable of production.

# DEFINITIONS

a.   " <u>You</u>", "<u>Your</u>" refers to the Person (as defined below) to whom this request is addressed, including his/her/its employees, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on your behalf, including your Representative (as defined below).

b.   "<u>Materials</u>" shall mean all "Documents", "Writings", "Agreements", and "Communications" as those terms are defined herein.

c.   "<u>Document(s)</u>" or "<u>Writing(s)</u>" shall be deemed to include every record of every type, and is used in the broadest sense and includes any medium upon which intelligence or information can be recorded and further includes, but is not limited to, all originals, nonidentical copies and drafts of the following items, whether printed, handwritten, typed, recorded, or stored on any electromagnetic storage device, or reproduced by hand, including without limitation correspondence, memoranda, invoices, receipts, records, ledger cards or other accounting records, voucher, check, shop order, diary, calendar, instruction, summaries of personal conversations or interviews, minutes or records of meetings or conferences, transcripts, opinions or reports of consultants, projections, drafts, contracts, agreements, confirmations, statistical statements, studies, telegrams, telexes, books, notes, reports, logs, diaries, tape recordings, video cassettes and data compilations from which information can be obtained, charts, photographs, notebooks, drawings, plans, printed materials of any kind, charts and interoffice communications, and any other writing of whatever description, including but not limited to any information contained in any computer, or represented by a computer program, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, study, work paper, handwritten note, draft, demand, chart, paper, print, laboratory record, drawing sketch, diagram, form, graph, index, list, tape, photograph, microfilm, data sheet, data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced and reproduced.

d.   "<u>Communication</u>" means any oral or written statement, dialogue, colloquy, discussion or conversation, and also means any transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location to another by electronic or similar means.

e.   "<u>Representative</u>" means any and all agents, employees, servants, officers, directors, attorneys, or other persons acting or purporting to act on behalf of the person in question.

f.   "<u>Evidencing</u>" means having a tendency to show, prove or disprove.

g.   The words "<u>and</u>" and "<u>or</u>" as used herein shall be construed either disjunctively or conjunctively as required by the context to bring within the scope of these Interrogatories any answer that might be deemed outside their scope by another construction.

h.    "Control" means in your possession, custody or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

i.    "Related to" or "Relating to" shall mean directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

j.    "Including" shall mean including but not limited to.

k.    "Person" refers to any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, business trust or other business enterprise, governmental body or agency, or governmental, public, legal or business entity, or group of natural persons or other entities whether *sui juris* or otherwise.

## DOCUMENT REQUESTS
### PLEASE PRODUCE THE FOLLOWING:

1.      A copy of Your financial statement generated by QuickBooks or other similar accounting software.

2.      A copy of Your income Tax Returns for 2010, 2011, 2012, and 2013 (including all schedules).

3.      A copy of all bank statements, canceled checks and ledgers since January 1, 2009.

4.      A copy of all of Your books and records (including financial records) since January 1, 2009, including but not limited to operating agreements and investment agreements.

5.      A copy of all of Your Documents related to any real property owned or sold by You, as well as any mortgages owned or sold by You.

6.      A copy of all of Your incorporation documents (and any amendments thereto).

7.      Copies of the books and records (including financial records) of any business owned, either jointly, partially or individually, by You since January 1, 2009, regardless of whether the business has ceased to operate.

8.      All Documents and Communications between You and Isaac Kodsi.

9.      All Documents and Communications between You and any lenders or investors, including but not limited to, SAW Capital, LLC, Maxim Credit Corp., and Funxion Group, LLC.

10.      List of all related companies or entities (including names and addresses of all principals) since January 1, 2009.

11.      A copy of Your Accounts Receivable with name, addresses and supporting documents.

7

12.     A copy of any and all credit applications and financial statements submitted to any bank, finance company, or other lender to obtain a loan or credit line since January 1, 2009, regardless of whether the loan was approved.

13.     A copy of your Balance Sheet, detailed and summary, year to date.

14.     A copy of any and all Communications and Documents between You and King Salomon Investments, LLC.

15.     A copy of any and all investment disclosures, prospectus, or other Documents given to investors or for the purpose of soliciting investors.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ISAAC KODSI,

Case No. 13-40134-LMI
Chapter 7

                    Debtors.

_____/

## SUBPOENA FOR RULE 2004 EXAMINATION *DUCES TECUM*

To:    **Ark Capital Group, LLC**
       **Kodsi Law Firm, P.A., Registered Agent**
       **1855 Griffin Road**
       **Suite A-370**
       **Dania Beach, FL 33004**

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure and Local Rule 2004-1.

| PLACE | DATE AND TIME |
|---|---|
| **DOCUMENTS MAY BE PRODUCED IN LIEU OF APPEARANCE** | **Monday, June 16, 2014** **10:00 a.m.** |

The examination will be recorded by Ouellette & Mauldin Court Reporters, Inc.

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

### SEE ATTACHED EXHIBIT A

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 21, 2014.

CLERK OF COURT

_____          OR
Signature of Clerk or Deputy Clerk              Attorney's signature

LF-84 (rev. 12/01/13)

The name, address, email address, and telephone number of the attorney representing (name of party) TRUSTEE, BARRY E. MUKAMAL, who issues or requests this subpoena, are:

Daniel N. Gonzalez, Esquire
Fla. Bar No: 0592749
MELAND RUSSIN & BUDWICK, P.A.
dgonzalez@melandrussin.com
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

LF-84 (rev. 12/01/13)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for (name of individual and title, if any): _____

on (date) _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (date)_____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____.

My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

LF-84 (rev. 12/01/13)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

**Access to Subpoena Materials**
Fed. R. Civ. P. 45(a) Committee Note (2013)
• Parties desiring access to information produced in response to this subpoena will need to follow up with the party serving the subpoena to obtain such access.
• The party serving the subpoena should make reasonable provisions for prompt access.
• The court for the district where compliance with the subpoena is required has authority to order notice of receipt of produced materials or access to them.

LF-84 (rev. 12/01/13)



701 W. Cypress Creek Rd.
Third Floor
Ft. Lauderdale, Fl. 33309
Tel 954.771.6777
Fax 954.771.6888
www.ark-finacial.com

Dear Investors,

Enclosed please find a partial payment for September 1, 2008.

Due to the significant external factors the environment has created a number of
challenges for the company. Ark Financial has not been spared from the economic
downturn currently affecting the United States and in particular our industry.

As a matter of prudence no interest payments will be paid effective October 1, 2008, until
sufficient progress has been made. I am actively working through the issues at the
current time to reach resolutions. As the company restructures its finances and gets itself
back on better footing, then it can permit itself to resume payments.

I look forward to discussing with you the current situation in detail. Please call me at
your earliest convenience.

Sincerely yours,

Isaac Kodsi

EXHIBIT B

~5184~

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: _____ 08-33931 CA 01

COMPASS BANK

Plaintiff(s),

vs.

Cypress Bay Development LLC
Isaac Kodsi, et al

Defendant(s).

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S
MOTION TO IMPOSE
CHARGING ORDERS
ON MULTIPLE ENTITIES

THIS CAUSE having come on to be heard on ~~on Plaintiff's/Defendant's Motion~~ Tues, January 3 2012
on Plaintiff's/Defendant's Motion _08-33931_ TO IMPOSE CHARGING ORDERS ON
MULTIPLE ENTITIES
and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

Compass Bank

ORDERED AND ADJUDGED that said Motion be, and the same is hereby
GRANTED A statutory Charging order
pursuant to Section 608.433(4)(a)(b), 17 & 50/
is entered against the following entities:
Estancia Palm Springs LLC, AIC Development LLO, AIC Capital
Group LLC AND AIC Loan Solutions LLC. A copy
this order shall be served on all of the LLC identified in
                                                    this
                                                    order

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this _3rd_
day of _January, 2012_

Conformed Copy

JAN 03 2012

AMY STEELE DONNER
Circuit Court Judge

CIRCUIT COURT JUDGE

Copies furnished to: Counsel of Record
117.34.531  Robert P. Frankel. 25 W Flagler Street, Suite 800 Miami 12 33131
Steven R. Amster- Kodsi Law Firm, 701 W Cypress Creek Rd Suite
                                               202 FtL 1 33309

EXHIBIT C

AMY KODSI
NANCY S KODSI
2608 NE 14TH STREET
FORT LAUDERDALE, FL 33304

688

63-27/631 FL
1548

12-16-10  Date

Pay to the
Order of _ ARK CAPITAL _____ $ 87,000 00/100

Eighty seven Thousand _____ XX/100 Dollars

**Bank of America** 
ACH R/T 063100277

Bank of America Advantage®

For _____

⑈063100277⑈ 003517031836⑈0688

FOR DEPOSIT ONLY
Terra Title Corp
Terra Title
Ark Capital
1100001653936

EXHIBIT D

Prepared by/Return to:
Kodsi Law Firm, P.A.
701 W. Cypress Creek Road, 3rd Floor
Fort Lauderdale, FL 33309
(954) 771-8277

CFN # 109596637
OR BK 47390 Pages 1919 - 1920
RECORDED 09/22/10 09:26:38 AM
BROWARD COUNTY COMMISSION
DEPUTY CLERK 3330
#2, 2 Pages

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS:**

That **K.I.T. FINANCIAL SERVICES, INC., d/b/a ARK Financial Group**, a Florida corporation, whose address is: 701 West Cypress Creek Road, Third Floor, Ft. Lauderdale, Florida, 33309, party of the first part, in consideration of the sum of TEN DOLLARS ($10.00), and other valuable consideration, received from or on behalf of **ARK CAPITAL GROUP, LLC**, a Florida limited liability company, whose address is: 701 West Cypress Creek Road, Third Floor, Ft. Lauderdale, Florida, 33309, party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second that certain Mortgage executed by MONICA JEAN and BILLY JEAN to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Quick Loan Funding Inc and bearing the date of April 6, 2007 and recorded as Instrument Number 106998201 in Book 43906, Page 1406 on April 17, 2007 of Official Records in the County Recorder's office of Broward County, State of Florida, describing land therein as:

**LOT 3, BLOCK 227, CITY OF LAUDERHILL, SECTION ONE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 81, PAGE 4, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA ("Property").**

AKA 8020 Northwest 47th , Lauderhill, Florida 33351

TOGETHER with the note or obligation therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage

**To Have and to Hold** the same unto the said party of the second part, its heirs, legal representatives, successors and assigns forever.

EXHIBIT E

Signed, sealed and delivered in our presence:

WITNESSES:

K.I.T. FINANCIAL SERVICES, INC.,
d/b/a ARK Financial Group
a Florida corporation

Print Name: PAUL D. GOTTFRIED

By: _____
        Isaac Kodsi, President

Print Name: STEVEN R. AMSTER

**corporate seal**

STATE OF FLORIDA
COUNTY OF BROWARD

        The foregoing Special Warranty Deed was acknowledged before me this day of __1__ day of September 2010, by **ISAAC KODSI, as President of K.I.T Financial Services, Inc., on behalf of said corporation.**  He is personally known to me.

My Commission Expires:

_____
Notary Public

PAUL D. GOTTFRIED
MY COMMISSION # DD 917127
EXPIRES: August 16, 2013
Bonded Thru Notary Public Underwriters

EXTENSION ATTACHED

Form **1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2009, or tax year beginning .............. , ending ..............

▶ **See separate instructions.**

OMB No. 1545-0099

**2009**

| A Principal business activity | Use the IRS label. Other-wise, print or type. | Name of partnership | D Employer identification number |
|---|---|---|---|
| **DEVELOPMENT** | | **ARK CAPITAL GROUP LLC** | **01-0858354** |
| B Principal product or service | | Number, street, and room or suite no. If a P.O. box, see the instructions. | E Date business started |
| **SERVICE** | | **701 W CYPRESS CREEK RD STE 301** | **03/31/2006** |
| C Business code number | | City or town, state, and ZIP code | F Total assets (see the instructions) |
| **531390** | | **FT LAUDERDALE       FL 33309** | $ **767,655** |

G Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**(6)** ☐ Technical termination - also check (1) or (2)

H Check accounting method: **(1)** ☒ Cash **(2)** ☐ Accrual **(3)** ☐ Other (specify) ▶

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ **2**

J Check if Schedules C and M-3 are attached

**Caution.** Include **only** trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

### Income

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a | |
| b | Less returns and allowances | 1b | 1c |
| 2 | Cost of goods sold (Schedule A, line 8) | | 2 |
| 3 | Gross profit. Subtract line 2 from line 1c | | 3 |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | 4 |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | 5 |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 |
| 7 | Other income (loss) (attach statement) | | 7 |
| 8 | **Total income (loss). Combine lines 3 through 7** | | 8 |

### Deductions (see the instructions for limitations)

| | | | |
|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | 9 |
| 10 | Guaranteed payments to partners | | 10 |
| 11 | Repairs and maintenance | | 11 |
| 12 | Bad debts | | 12 |
| 13 | Rent | | 13 |
| 14 | Taxes and licenses | | 14 | 139 |
| 15 | Interest | | 15 |
| 16a | Depreciation (if required, attach Form 4562) | 16a | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | 16c |
| 17 | Depletion **(Do not deduct oil and gas depletion.)** | | 17 |
| 18 | Retirement plans, etc. | | 18 |
| 19 | Employee benefit programs | | 19 |
| 20 | Other deductions (attach statement)            **See Statement 1** | | 20 | 36 |
| 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | 21 | 175 |
| 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | | 22 | -175 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

COPY

Signature of general partner or limited liability company member manager            Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

| **Paid Preparer's Use Only** | Preparer's signature | | Date **05/17/10** | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN **P00018003** |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | **HAFT, STEINLAUF & CO.** | | | EIN ▶ **65-0176136** |
| | | **1200 S. PINE ISLAND ROAD, SUITE 475** | | | Phone no. |
| | | **PLANTATION, FL          33324-4470** | | | **954-476-7020** |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.            Form **1065** (2009)

DAA

EXHIBIT F

Form **7004**

(Rev. December 2008)

Department of the Treasury
Internal Revenue Service

## Application for Automatic Extension of Time To File Certain Business Income Tax, Information, and Other Returns

▶ File a separate application for each return.

▶ See separate instructions.

OMB No. 1545-0233

| Type or Print | Name | Identifying number |
|---|---|---|
| | ARK CAPITAL GROUP LLC | 01-0858354 |

File by the due date for the return for which an extension is requested. See instructions.

Number, street, and room or suite no. (If P.O. box, see instructions.)

701 W CYPRESS CREEK RD STE 301

City, town, state, and ZIP code (If a foreign address, enter city, province or state, and country (follow the country's practice for entering postal code)).

FT LAUDERDALE    FL 33309

**Note. See instructions before completing this form.**

### Part I    Automatic 5-Month Extension Complete if Filing Form 1065, 1041, or 8804

1a  Enter the form code for the return that this application is for (see below) `09`

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 1065 | 09 | Form 1041 (estate) | 04 |
| Form 8804 | 31 | Form 1041 (trust) | 05 |

### Part II    Automatic 6-Month Extension Complete if Filing Other Forms

b  Enter the form code for the return that this application is for (see below)

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 706-GS(D) | 01 | Form 1120-PC | 21 |
| Form 706-GS(T) | 02 | Form 1120-POL | 22 |
| Form 1041-N | 06 | Form 1120-REIT | 23 |
| Form 1041-QFT | 07 | Form 1120-RIC | 24 |
| Form 1042 | 08 | Form 1120-S | 25 |
| Form 1065-B | 10 | Form 1120-SF | 26 |
| Form 1066 | 11 | Form 3520-A | 27 |
| Form 1120 | 12 | Form 8612 | 28 |
| Form 1120-C | 34 | Form 8613 | 29 |
| Form 1120-F | 15 | Form 8725 | 30 |
| Form 1120-FSC | 16 | Form 8831 | 32 |
| Form 1120-H | 17 | Form 8876 | 33 |
| Form 1120-L | 18 | Form 8924 | 35 |
| Form 1120-ND | 19 | Form 8928 | 36 |
| Form 1120-ND (section 4951 taxes) | 20 | | |

2   If the organization is a foreign corporation that does not have an office or place of business in the United States, check here ▶ ☐

3   If the organization is a corporation and is the common parent of a group that intends to file a consolidated return, check here ▶ ☐

If checked, attach a schedule, listing the name, address, and Employer Identification Number (EIN) for each member covered by this application.

### Part III    All Filers Must Complete This Part

4   If the organization is a corporation or partnership that qualifies under Regulations section 1.6081-5, check here ▶ ☐

5a  The application is for calendar year 20 **09** , or tax year beginning ............... , and ending ...............

b  **Short tax year.** If this tax year is less than 12 months, check the reason:
☐ Initial return    ☐ Final return    ☐ Change in accounting period    ☐ Consolidated return to be filed

| | | |
|---|---|---|
| 6   Tentative total tax | 6 | 0 |
| 7   Total payments and credits (see instructions) | 7 | |
| 8   Balance due. Subtract line 7 from line 6. Generally, you must deposit this amount using the Electronic Federal Tax Payment System (EFTPS), a Federal Tax Deposit (FTD) Coupon, or Electronic Funds Withdrawal (EFW) (see instructions for exceptions) | 8 | |

For Privacy Act and Paperwork Reduction Act Notice, see separate Instructions.

DAA

Form **7004** (Rev. 12-2008)

Form 1065 (2009)  **ARK CAPITAL GROUP LLC**      01-0858354      Page **2**

## Schedule A    Cost of Goods Sold (see the instructions)

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach statement) | 4 | |
| 5 | Other costs (attach statement) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:

    (i)  ☐ Cost as described in Regulations section 1.471-3

    (ii)  ☐ Lower of cost or market as described in Regulations section 1.471-4

    (iii) ☐ Other (specify method used and attach explanation) ▶

b Check this box if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c) ▶ ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ▶ ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership?   ☐ Yes   ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory?   ☐ Yes   ☐ No

If "Yes," attach explanation.

## Schedule B    Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| a | ☐ Domestic general partnership    b ☐ Domestic limited partnership | | |
| c | ☒ Domestic limited liability company    d ☐ Domestic limited liability partnership | | |
| e | ☐ Foreign partnership    f ☐ Other ▶ | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | X |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | | Yes | No |
|---|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **1065** (2009)

DAA

Form 1065 (2009)   **ARK CAPITAL GROUP LLC**                                   01-0858354                    Page **3**

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy **all four** of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2009, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. | | X |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? See instructions for details regarding a section 754 election. | | X |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions. | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than entities wholly-owned by the partnership throughout the tax year) ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP | **Isaac Kodsi** | Identifying number of TMP | ████████ |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative | | Phone number of TMP | |
| Address of designated TMP | **701 W Cypress Creek Road  Suite 302**  **Ft Lauderdale        FL 33309** | | |

Form **1065** (2009)

DAA

Form 1065 (2009)  ARK CAPITAL GROUP LLC                              01-0858354                           Page 4

| Schedule K | | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|---|
| | 1 | Ordinary business income (loss) (page 1, line 22) | 1 | -175 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) ............................ 3a | | |
| | b | Expenses from other rental activities (attach statement) ... 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Guaranteed payments | 4 | |
| | 5 | Interest income | 5 | |
| | 6 | Dividends:  a Ordinary dividends | 6a | |
| | | b Qualified dividends ................... 6b | | |
| | 7 | Royalties | 7 | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b | Collectibles (28%) gain (loss) ........................... 9b | | |
| | c | Unrecaptured section 1250 gain (attach statement) ...... 9c | | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 | Other income (loss) (see instructions) Type ▶ | 11 | |
| | 12 | Section 179 deduction (attach Form 4562) | 12 | |
| | 13a | Contributions | 13a | |
| | b | Investment interest expense | 13b | |
| | c | Section 59(e)(2) expenditures: | | |
| | | (1) Type ▶                                    (2) Amount ▶ | 13c(2) | |
| | d | Other deductions (see instructions) Type ▶ | 13d | |
| | 14a | Net earnings (loss) from self-employment | 14a | |
| | b | Gross farming or fishing income | 14b | |
| | c | Gross nonfarm income | 14c | |
| | 15a | Low-income housing credit (section 42(j)(5)) | 15a | |
| | b | Low-income housing credit (other) | 15b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d | Other rental real estate credits (see instructions)        Type ▶ | 15d | |
| | e | Other rental credits (see instructions)                    Type ▶ | 15e | |
| | f | Other credits (see instructions)                           Type ▶ | 15f | |
| | 16a | Name of country or U.S. possession ▶ | | |
| | b | Gross income from all sources | 16b | |
| | c | Gross income sourced at partner level | 16c | |
| | | Foreign gross income sourced at partnership level | | |
| | d | Passive category ▶        e General category ▶        f Other ▶ | 16f | |
| | | Deductions allocated and apportioned at partner level | | |
| | g | Interest expense ▶        h   Other                          ▶ | 16h | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i | Passive category ▶        j General category ▶        k Other ▶ | 16k | |
| | l | Total foreign taxes (check one): ▶  Paid ☐      Accrued ☐ | 16l | |
| | m | Reduction in taxes available for credit (attach statement) | 16m | |
| | n | Other foreign tax information (attach statement) | | |
| | 17a | Post-1986 depreciation adjustment | 17a | |
| | b | Adjusted gain or loss | 17b | |
| | c | Depletion (other than oil and gas) | 17c | |
| | d | Oil, gas, and geothermal properties-gross income | 17d | |
| | e | Oil, gas, and geothermal properties-deductions | 17e | |
| | f | Other AMT items (attach statement) | 17f | |
| | 18a | Tax-exempt interest income | 18a | |
| | b | Other tax-exempt income | 18b | |
| | c | Nondeductible expenses | 18c | |
| | 19a | Distributions of cash and marketable securities | 19a | |
| | b | Distributions of other property | 19b | |
| | 20a | Investment income | 20a | |
| | b | Investment expenses | 20b | |
| | c | Other items and amounts (attach statement) | | |

Row labels (left margin): Income (Loss) · Deductions · Self-Employment · Credits · Foreign Transactions · Alternative Minimum Tax (AMT) Items · Other Information

DAA

Form **1065** (2009)

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | | 1 | −175 |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | | | −175 | | | |

## Schedule L — Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 499 | | |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) See Stmt 2 | | 846 | | 846 |
| 7 | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | | | | |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | | | |
| 12a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 13 | Other assets (attach statement) See Stmt 3 | | 767,369 | | 766,809 |
| 14 | Total assets | | 768,714 | | 767,655 |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach statement) See Stmt 4 | | 780,475 | | 778,782 |
| 18 | All nonrecourse loans See Stmt 5 | | 1,491 | | 1,491 |
| 19 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) See Stmt 6 | | 28,895 | | 29,704 |
| 21 | Partners' capital accounts | | −42,147 | | −42,322 |
| 22 | Total liabilities and capital | | 768,714 | | 767,655 |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | −175 | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a | Depreciation $ | |
| a | Depreciation $ | | | | |
| b | Travel and entertainment $ | | 8 | Add lines 6 and 7 | |
| | | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | −175 |
| 5 | Add lines 1 through 4 | −175 | | | |

## Schedule M-2 — Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | −42,147 | 6 | Distributions: a Cash | |
| 2 | Capital contributed: a Cash | | | b Property | |
| | b Property | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | −175 | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | |
| 5 | Add lines 1 through 4 | −42,322 | 9 | Balance at end of year. Subtract line 8 from line 5 | −42,322 |

DAA

m 1065 (2009)

**SCHEDULE B-1**
**(Form 1065)**

(December 2009)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065. See instructions on back.

OMB No. 1545-0099

| Name of partnership | Employer identification number (EIN) |
|---|---|
| ARK CAPITAL GROUP LLC | 01-0858354 |

## Part I — Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part II — Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| Isaac Kodsi | ▮▮▮▮▮▮ | United States | 50.000000 |
| PETER TOCCI | ▮▮▮▮▮▮ | United States | 50.000000 |
| | | | |
| | | | |
| | | | |
| | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (12-2009)

DAA

651109

**Partner# 1**

**Schedule K-1**
**(Form 1065)**

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning_____
ending_____

OMB No. 1545-0099

☐ Final K-1      ☐ Amended K-1

## Partner's Share of Income, Deductions, Credits, etc.

▶ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| **1** | Ordinary business income (loss)  **-87** | **15** | Credits |
| **2** | Net rental real estate income (loss) | | |
| **3** | Other net rental income (loss) | **16** | Foreign transactions |
| **4** | Guaranteed payments | | |
| **5** | Interest income | | |
| **6a** | Ordinary dividends | | |
| **6b** | Qualified dividends | | |
| **7** | Royalties | | |
| **8** | Net short-term capital gain (loss) | | |
| **9a** | Net long-term capital gain (loss) | **17** | Alternative minimum tax (AMT) items |
| **9b** | Collectibles (28%) gain (loss) | | |
| **9c** | Unrecaptured section 1250 gain | | |
| **10** | Net section 1231 gain (loss) | **18** | Tax-exempt income and nondeductible expenses |
| **11** | Other income (loss) | | |
| | | **19** | Distributions |
| **12** | Section 179 deduction | | |
| **13** | Other deductions | **20** | Other information |
| | | Y* | STMT |
| **14** | Self-employment earnings (loss) | | |

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
01-0858354

**B** Partnership's name, address, city, state, and ZIP code
ARK CAPITAL GROUP LLC

701 W CYPRESS CREEK RD STE 301
FT LAUDERDALE      FL 33309

**C** IRS Center where partnership filed return
Ogden, UT   84201-0011

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

Isaac Kodsi

701 W Cypress Creek Road   Suite 302
Ft Lauderdale      FL 33309

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner?  **Individual**

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | 19 |
| Qualified nonrecourse financing | $ | 389,373 |
| Recourse | $ | |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | -21,073 |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | -87 |
| Withdrawals & distributions | $ ( | ) |
| Ending capital account | $ | -21,160 |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

651109

Partner# 2

**Schedule K-1**
**(Form 1065)**

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning _____
ending _____

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

## Partner's Share of Income, Deductions, Credits, etc.

▶ See back of form and separate instructions.

| Part I | Information About the Partnership |
| --- | --- |

**A** Partnership's employer identification number
01-0858354

**B** Partnership's name, address, city, state, and ZIP code

ARK CAPITAL GROUP LLC

701 W CYPRESS CREEK RD STE 301
FT LAUDERDALE      FL 33309

**C** IRS Center where partnership filed return
Ogden, UT  84201-0011

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
| --- | --- |

**E** Partner's identifying number
▓▓▓▓▓▓▓▓

**F** Partner's name, address, city, state, and ZIP code

PETER TOCCI

1044 NE 28 TERRACE
POMPANO BEACH      FL 33062

**G** ☐ General partner or LLC
member-manager
☒ Limited partner or other LLC member

**H** ☒ Domestic partner      ☐ Foreign partner

**I** What type of entity is this partner?  **Individual**

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
| --- | --- | --- |
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

**K** Partner's share of liabilities at year end:

| | |
| --- | --- |
| Nonrecourse | $ 18 |
| Qualified nonrecourse financing | $ 389,372 |
| Recourse | $ |

**L** Partner's capital account analysis:

| | |
| --- | --- |
| Beginning capital account | $ -21,074 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ -88 |
| Withdrawals & distributions | $ ( ) |
| Ending capital account | $ -21,162 |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
| --- | --- |

| # | Description | # | Description |
| --- | --- | --- | --- |
| 1 | Ordinary business income (loss) −88 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | 19 | Distributions |
| 13 | Other deductions | 20 | Other information |
| 14 | Self-employment earnings (loss) | Y* | STMT |

*See attached statement for additional information.

For IRS Use Only



# Federal Statements

### Statement 1 - Form 1065, Page 1, Line 20 - Other Deductions

| Description | Amount |
|---|---|
| BANK CHARGE | $ 36 |
| Total | $ 36 |

# Federal Statements

## Statement 2 - Form 1065, Schedule L, Line 6 - Other Current Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| L/R P TOCCI | $ 846 | $ 846 |
| Total | $ 846 | $ 846 |

## Statement 3 - Form 1065, Schedule L, Line 13 - Other Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| BACK BAY ISLE INVESTMENT | $ 767,369 | $ 766,809 |
| Total | $ 767,369 | $ 766,809 |

## Statement 4 - Form 1065, Schedule L, Line 17 - Other Current Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| L/P ARK FINANCIAL | $ 530,475 | $ 528,745 |
| L/P GEM RESOURCES | 250,000 | 250,000 |
| TEMPORARY CASH OVERDRAFT | | 37 |
| Total | $ 780,475 | $ 778,782 |

## Statement 5 - Form 1065, Schedule L, Line 18 - All Nonrecourse Loans

| Description | Beginning of Year | End of Year |
|---|---|---|
| L/P I KODSI | $ 1,491 | $ 1,491 |
| Total | $ 1,491 | $ 1,491 |

## Statement 6 - Form 1065, Schedule L, Line 20 - Other Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| SUSPENSE | $ 28,895 | $ 29,704 |
| Total | $ 28,895 | $ 29,704 |

**Federal Statements**

**Isaac Kodsi**
**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**

### Schedule K-1, Line 20Y - Additional Supplemental Information

#### Description

| Analysis of "At Risk" versus Not "At Risk" Liabilities | "At Risk" | Not "At Risk" |
|---|---|---|
| Nonrecourse | 0 | 19 |
| Qualified Nonrecourse | 389,373 | 0 |
| Recourse | 0 | 0 |

# Federal Statements

## PETER TOCCI
### 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

### Schedule K-1, Line 20Y - Additional Supplemental Information

| Description |
| --- |

| Analysis of "At Risk" versus Not "At Risk" Liabilities | "At Risk" | Not "At Risk" |
| --- | --- | --- |
| Nonrecourse | 0 | 18 |
| Qualified Nonrecourse | 389,372 | 0 |
| Recourse | 0 | 0 |

HAFT, STEINLAUF & CO.
1200 S. PINE ISLAND ROAD, SUITE 475
PLANTATION, FL  33324-4470

ARK CAPITAL GROUP LLC
701 W CYPRESS CREEK RD STE 301
FT LAUDERDALE, FL  33309

# HAFT, STEINLAUF & CO.
## 1200 S. PINE ISLAND ROAD, SUITE 475
## PLANTATION, FL 33324-4470
## 954-476-7020

May 17, 2010

**CONFIDENTIAL**

ARK CAPITAL GROUP LLC
701 W CYPRESS CREEK RD STE 301
FT LAUDERDALE,  FL  33309

For professional services rendered in connection with the preparation of your 2009 partnership tax return:

|   | |
|---|---|
|   | Form 7004 (1065) (Automatic Extension of Time) |
|   | Form 1065 (Return of Partnership Income) |
| 2 | Schedule K-1 (1065), Page 1 (Partner's Share of Income) |
| 2 | Schedule K-1 Analysis Inc (Dec) Worksheet |
|   | Schedule K-1 Summary Worksheet |
|   | Capital Reconciliation Worksheet |

| | | |
|---|---|---:|
| Preparation fee | | 1,200.00 |
| Discount | | -700.00 |
| Amount due | $ | 500.00 |

# HAFT, STEINLAUF & CO.
## 1200 S. PINE ISLAND ROAD, SUITE 475
## PLANTATION, FL 33324-4470
## 954-476-7020

May 17, 2010

**CONFIDENTIAL**

ARK CAPITAL GROUP LLC
701 W CYPRESS CREEK RD STE 301
FT LAUDERDALE, FL 33309

Dear Isaac:

We have prepared the following returns from information provided by you without verification or audit.

     U.S. Return of Partnership Income (Form 1065)

We suggest that you examine these returns carefully to fully acquaint yourself with all items contained therein to ensure that there are no omissions or misstatements. Attached to each return is an instruction sheet for signing and filing. Please follow those instructions carefully.

Also enclosed is any material you furnished for use in preparing the returns. If the returns are examined, requests may be made for supporting documentation. Therefore, we recommend that you retain all pertinent records for at least seven years.

In order that we may properly advise you of tax considerations, please keep us informed of any significant changes in your financial affairs or of any correspondence received from taxing authorities.

If you have any questions, or if we can be of assistance in any way, please call.

Sincerely,


HAFT, STEINLAUF & CO.

## Filing Instructions

## ARK CAPITAL GROUP LLC

## Form 1065 - U.S. Return of Partnership Income

## Taxable Year Ended December 31, 2009

**Date Due:**    September 15, 2010

**Remittance:**    None is required.

**Mail To:**    Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0011

**Signature:**    The return should be signed and dated on page 1 by a limited liability company member.

**Other:**    Initial and date the copy of Form 1065, and retain it for your records.