**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>**ISAAC KODSI,**<br><br>    Debtor. | CASE NO. 13-40134-LMI<br>CHAPTER 7 |
| **BARRY E. MUKAMAL**, Chapter 7 Trustee<br>of the Bankruptcy Estate of Isaac Kodsi,<br><br>    Plaintiffs,<br><br>v.<br><br>**ARK CAPITAL GROUP, LLC, AMY**<br>**KODSI** and **NANCY KODSI,**<br><br>    Defendant. | ADV. PRO. NO. 14-01763-LMI |

## ARK CAPITAL GROUP, LLC'S MOTION TO DISMISS TRUSTEE'S COMPLAINT WITH PREJUDICE, MOTION TO STRIKE AND MOTION FOR MORE DEFINITE STATEMENT

Ark Capital Group, LLC ("Ark Capital"), by and through undersigned counsel, respectfully requests the Court dismiss all of the Trustee's claims in this case with prejudice, as the Trustee, acting as representative of the estate, cannot state claims against Ark Capital based on well-founded law, recent Supreme Court precedent and the facts of the case. As additional requests for relief, Ark Capital requests the Court strike a number of paragraphs that are irrelevant to the causes of action, or alternatively require the Trustee to amend the Complaint and provide a more definite, and less cluttered, statement. As grounds in support thereof, Ark Capital states as follows:

## Introduction

Trustee, Barry Mukamal (the "Trustee") has gone to great lengths in what can only be described as an procedurally improper "shotgun" complaint to attempt to somehow intertwine the Debtor, Isaac Kodsi (the "Debtor") and portray him as either the owner or the alter ego of Ark Capital. Unfortunately for the Trustee, all of his claims directed at Ark Capital fail as a matter of law. The Trustee is not authorized to bring an alter ego claim based both on long standing Supreme Court and Eleventh Circuit precedent, as well as well as Florida case law that explicitly held that a bankruptcy trustee lacks standing to bring an alter ego claim. Even if Trustee could assert the claim, federal courts have held that a claim for "alter ego" cannot be asserted as an independent cause of action.

Next, the Trustee cannot allege a claim to substantively consolidate Ark Capital, a non-debtor, with the Debtor based on the facts of the Complaint. The relief that the Trustee seeks is not authorized anywhere in the Code, and prior Supreme Court precedent does not authorize substantive consolidation under the facts the Trustee has alleged. Moreover, such treatment of Ark Capital's assets and creditors runs contradictory to 11 U.S.C. § 726 and therefore runs afoul of the Supreme Court's opinion in *Law v. Siegel*,[1] the latest decision from the Court restricting the Bankruptcy Court's equitable powers.[2] The Trustee's turnover claims fail because there is a dispute as to ownership of the property the Trustee seeks to recover, thus making turnover unavailable to the Trustee. The claim for a determination of ownership of Ark Capital is not properly brought against Ark Capital, but is more appropriately a dispute between the estate and

---

[1] ___ U.S. ____, 134 S. Ct. 1188; 188 L. Ed. 2d 146; 2014 U.S. LEXIS 1784 (2014).

[2] Ark Capital is aware of this Court's opinion in *In re S&G Financial Services of So. Fla., Inc.*, 451 B.R. 573 (Bankr. S.D. Fla. 2011) and specifically the ruling that a trustee can assert a claim for substantive consolidation against a non-debtor. The case will be discussed further herein, but at the outset Ark Capital wished to advise the Court that Ark Capital is aware of the Court's decision.

codefendants Amy Kodsi and Nancy Kodsi.  Finally, the Trustee's claims for injunctive relief

fail because all of the Trustee's other claims against Ark Capital fail.  Accordingly, all of the

Trustee's claims against Ark Capital must be dismissed.

### Procedural Background

1.      On December 20, 2013, several creditors of the Debtor filed an involuntary

petition under Chapter 7 of the Title 11, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") against

the Debtor.  On March 28, 2104 the Debtor consented to the entry of an order for relief.

2.      The Trustee initiated the instant adversary proceeding on or about October 15,

2014 with the filing of the Complaint [ECF 1].

3.      The Complaint is 35 pages long.  It opens with 95 purported factual allegations

over 17 pages.  After said 95 paragraphs, the Complaint sets forth 14 counts seeking relief under

various theories against three defendants, Ark Capital, Nancy Kodsi and Amy Kodsi.  Each of

the 14 counts adopts all 95 factual allegations without any discussion as to which of the

allegations are actually relevant to the particular count.  The 14 counts add an additional 18

pages and 117 paragraphs to the Complaint (not counting the unnumbered prayers for relief at

the end of each count).

4.      The 95 factual allegations are broken down into sections, the titles of some of

which betray their irrelevance.  Part  I contains: A. Nature of Action, of which paragraph 2 is all

opinion and conjecture, contains no factual allegations, and has no relevance whatsoever to the

14 counts; B. Parties; and C. Jurisdiction and Venue.   Part II contains: A. Procedural

Background, of which paragraphs 14-18 have no relevance and are only set forth to prejudice

Ark Capital; B. Debtor's Factual Background, none of which have anything whatsoever to do

with the specific facts related to the claims raised in the Complaint as they are all far too

removed temporally and have no direct bearing to Ark Capital; or involve other companies

whose activities have nothing to do with the claims raised in the Complaint; C. Ark Capital, where, in Paragraph 46, the Trustee finally alleges something about Ark Capital; D. The Debtor Comingles His Assets With Ark Capital, which, while vehemently denied, at least is relevant to the claims alleged; E. Mother, having to do with Co-Defendant Amy Kodsi; F. Nancy Kodsi, again having to do with a co-defendant; G. The Ark Capital Tax returns; and H. Ark Capital's Assets Known to the Trustee, which has no bearing on the claims alleged in the case.

5.     Each of the 95 paragraphs is then readopted in each count.  No attempt is made to sort out which allegations are actually relevant to the particular counts.

6.     The Counts asserted against Ark Capital are Count I (Declaratory Relief), II (Alter Ego), III (Turnover), V (Injunctive Relief), and VII (Substantive Consolidation).  Ark Capital respectfully asserts that all claims must be dismissed as the Trustee cannot state a claim against Ark Capital under any of the above theories.

## <u>Legal Argument</u>

The legal standards for motions to dismiss are well known and not subject to dispute.  On a motion to dismiss, the well pleaded facts stated in the complaint and all reasonable references therefrom are taken as true.  *Bickley v. Caremark Rx, Inc*., 461 F.3d 1325, 1328 (11th Cir. 2006) (citation omitted).  Additionally, as the Supreme Court stated in the *Twombly/Iqbal* cases,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 137 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

I.    **The Court Should Dismiss the Trustee's Complaint as a "Shotgun" Pleading, Strike All Irrelevant Allegations from the Complaint, and Direct the Trustee to File a Complaint Containing a More Definite Statement in Compliance with the Federal Rules of Civil Procedure.**

In an attempt to confound issues and generally paint the Debtor as some sort of bad actor, the Trustee has included in the Complaint statements of conjecture and opinion, numerous allegations discussing the Debtor's actions long before the relevant time period of the instant case, and other statements about companies that are outside the relevant facts of the instant case. The Complaint first contains 95 paragraphs of purported factual allegations, many of which have no bearing whatsoever on the causes of action that the Trustee has set forth. For example, Paragraph 2 does not even mention the parties to this case by name; rather, it goes through a long diatribe wherein the Trustee attempts to portray the Debtor in a negative light, most likely in the hopes of "poisoning the well" as to the Defendants and attempting to jaundice the Court's view of this case before a scintilla of real evidence is presented-something that Ark Capital is confident would not influence the Court.

The irrelevant allegations continue in Paragraphs 19 through 30, which all contain historical allegations that have nothing to do with the causes of action set forth in the Complaint. However, the Trustee was not finished at this point, as he continued to allege matters that have no bearing on the case against Ark Capital. While Paragraph 31 might arguably be relevant so that the Trustee can prove standing to bring state law fraudulent transfer claims pursuant to 11 U.S.C. § 544(b)-even though a plain and simple allegation that a creditor exists who could have brought the claims under applicable state law would have sufficed-the Trustee piles on the allegations far past the point that is necessary at the pleading stage to establish the existence of one creditor. Then, continuing with the course of conduct of alleging matters that have nothing to do with the instant matter, the Trustee travels into an explanation of companies that are not

relevant to the allegations of the instant case. Ark Capital cannot see any logical reason why all of these allegations would be included, other than the Trustee is hoping that by continuing to say the same thing over and over again, it will eventually be determined to be true, even if it is not.

Fortunately for Ark Capital, there are remedies for filing of shotgun pleadings. Initially, and to the extent the Court does not dismiss any counts on substantive grounds, Ark requests that the Court strike the redundant, immaterial and impertinent allegations pursuant to Fed.R.Civ.P. 12(f), which the Court may do on its own or on a motion to strike, as well as requests that the Trustee be directed to make a more definite statement of his alleged claims pursuant to Fed.R.Civ.P. 12(e). Both requests find support in the Eleventh Circuit's continued condemnation of "shotgun" pleadings. The Eleventh Circuit has issued numerous opinions wherein it has specifically addressed the issue of shotgun pleadings, and time and time again, has directed the trial courts to address them at the pleading stage. In *Johnson Enters. of Jacksonville, Inc. v. FPL Group*, *Inc.* 162 F. 3d 1290, 1333 (11th Cir. 1998) the court stated as follows:

> This case is part of a broader phenomenon that we have previously labeled "shotgun pleading." These types of cases invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief. The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement. **If the trial judge does not quickly demand repleader, all is lost** —extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits. Given the massive record and loose pleadings before it, the trial court, whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials; the case therefore proceeds to trial without proper delineation of issues, as happened here. An appeal ensues, and the court of appeals assumes the trial court's responsibility of sorting things out. The result is a massive waste of judicial and private resources; moreover, "the litigants suffer, and society loses confidence in the court[s'] ability to administer justice." We recognize the time pressures that the federal district courts face because of crowded dockets; it is much easier in the short term to permit shotgun pleadings—in the hope that the parties will settle their dispute—instead of intervening *sua sponte* to narrow the issues. In the long run, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the

pleadings until the issues are reasonably well defined. **As we have previously stated, and state once again, <u>district courts have the power and the duty</u> to define the issues at the earliest stages of litigation.**

*Id.* at 1333-1334 (emphasis added) (citations omitted). *Johnson Enterprises* was not the first time the Eleventh Circuit discussed the issue of shotgun pleadings. *See Pelletier v. Zweifel*, 921 F. 2d 1465, 1518 (11th Cir. 1991) (describing the complaints filed in the case as "quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of action that they assert each count incorporates all of these factual allegations … anyone schooled in the law who read these complaints, however, would know that many of the facts alleged could not possibly be material to all counts.") *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F. 3d 162, 165 (11th Cir. 1997) (stating complaint "is typical of the sort of shotgun notice pleading we have encountered in scores of cases brought before this Court. In such cases, it is particularly important for the district courts to undertake the difficult **but essential** task of attempting to narrow and define the issues from the earliest stages of the litigation. Absent such efforts, shotgun notice pleadings … impede the orderly, efficient and economic disposition of disputes.") (emphasis added) (citations omitted); *Anderson v. District Bd. of Trustees of Cent. Fla. Community College,* 77 F. 3d 364, 366-367 (11th Cir. 1996) (describing the complaint, which had six counts and 24 opening paragraphs that were adopted into all counts, as a "perfect example of 'shotgun' pleading, in that it is virtually impossible to know which allegations of facts are intended to support which claim(s) for relief. Under the Federal Rules of Civil Procedure, a defendant faced with a complaint … is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court pursuant to Rule 12(e) to require the plaintiff to file a more definite statement.") (citations omitted); *Liebman v. Duetsche Bank Nat'l Trust Co.*, 462 Fed. Appx. 876, 879 (11th Cir. 2012) ("[W]e have routinely condemned 'shotgun' pleadings. A 'shotgun' pleading is a pleading that 'incorporate[s]' every antecedent allegation by

reference into each subsequent claim for relief or affirmative defense. Shotgun pleadings make it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'") (citations omitted); *Wagner v. First Horizon Pharm. Corp.*, 464 F. 3d 1273, 1279 (11th Cir. 2006) ("[T]he complaint at issue in this case is a proverbial shotgun pleading. Shotgun pleadings are those that incorporate every antecedent allegation by reference to each subsequent claim for relief or affirmative defense. '[S]hotgun pleadings wreck havoc on the judicial system.' Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to efficiently use those resources.") (citations omitted).

The Complaint that the Trustee has filed in this case falls squarely within the definition of "shotgun pleading" that the Eleventh Circuit has specifically stated must be winnowed down at the pleading stages, lest the case the case spiral out of control. The Complaint contains 95 factual allegations prior to asserting a single count. After the assertion of the 95 factual allegations, the Complaint contains 14 counts, which assert another 117 allegations, many of which repeat the factual allegations set forth in the initial 95 paragraphs that are adopted in each count. It goes without saying that not all 95 paragraphs of factual allegations support each of the 14 counts; it goes further without saying that the pleading, or more appropriately repeating, of factual allegations in each count after setting them forth in the original 95 counts is pointless. Lastly, as noted above, a large portion of the factual allegations have nothing to do with the instant case. The Complaint is thus a classic "shotgun pleading" that must be repled. Ark Capital respectfully requests the Court dismiss the Complaint, direct the Trustee to replead to the extent the Trustee can legally assert causes of action against Ark Capital, to withdraw all irrelevant allegations, and to state with specificity the various paragraphs that the Trustee asserts support his claims for relief.

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

## II.    The Trustee Cannot Allege a Claim for Alter Ego on Both Procedural and Substantive Grounds.

Count II seeks a determination that Ark Capital is the alter ego of the Debtor. As an initial matter, the claim for "alter ego" cannot be pled as a separate cause of action under federal law, subjecting the count to dismissal with prejudice. Even assuming this procedural issue can be resolved, however, the Trustee lacks standing to bring the claim as there is no provision in the Bankruptcy Code that authorizes an alter ego claim, and the estate does not own such a cause of action. Accordingly, Count II must be dismissed with prejudice.

### A.    "Alter Ego" Cannot be Pled as an Independent Cause of Action in Federal Court.

Alter ego is a theory under which a party, generally a creditor, seeks to impose liability for some wrong against a corporation or shareholder based on the premise that the separate identities of the two parties in question can be disregarded. Under federal law, however, "alter ego" is a remedy, **not** a cause of action, and thus cannot be pled as an independent cause of action.

In *Raimbeault v. Accurate Machine & Tool, LLC,* 2014 U.S. Dist. LEXIS 140313 (S.D. Fla. 2014) (Bloom, J.) the court dismissed an independent claim for alter ego with prejudice. The court noted the difference between Florida and federal law and specifically that, under Florida law, a claim for veil piercing can be pled as an independent cause of action. However, under Supreme Court precedent, the court found that dismissal of the alter ego count of plaintiff's complaint with prejudice was appropriate:

> "Florida courts permit alter ego allegations to be pled as a distinct cause of action." . . . **However, federal courts generally find that "[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity."**

*Raimbleaut*, 2014 U.S. Dist. LEXIS 140313 at *23-24 (emphasis added) (citations omitted).  As further support for the decision to dismiss the alter ego claim with prejudice, the court cited to the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349, 354, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996) where the Court stated that veil piercing "is not itself an independent cause of action, but rather is a means of imposing liability on an underlying cause of action." *Id.* (citation omitted).

Applying the above to the instant case, the Trustee's Count II must be dismissed with prejudice.  The Trustee cannot plead, as an independent cause of action, a claim for alter ego.  Federal law simply does not provide for such.  Thus, even if the Trustee could somehow overcome the serious standing hurdles he also faces in his alter ego claim, he would not be able to plead the claim in any event.  Accordingly, Ark Capital requests the Court dismiss Count II with prejudice.

> **B.     The Trustee Cannot Allege a Claim for Alter Ego Because the Trustee Lacks Standing to Raise Such A Claim.**

Even assuming that the Trustee can procedurally plead an alter ego claim, the claim fails on substantive grounds.  The Bankruptcy Code contains no statutory provision that authorizes a trustee to file an action seeking determination that a non-debtor company is the alter ego of a debtor.  Thus, the only plausible grounds on which a trustee could assert an alter ego claim would be if the debtor owned an alter ego claim that became property of the estate pursuant to 11 U.S.C. § 541.  However, the Supreme Court, Eleventh Circuit and Florida's Fourth District Court of Appeal, which specifically cited to and followed the Supreme Court and Eleventh Circuit, have all issued decisions that, taken together, foreclose the Trustee's ability to assert an alter ego claim. Accordingly, the alter ego claim the Trustee has raised must be dismissed with prejudice.

"[I]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor] itself." *Sherson Lehman Hutton, Inc. v. Wagoner*, 944 F. 2d 114, 118 (2nd Cir. 1991) (citing *Kaplan v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972). The Eleventh Circuit has stated that, "[L]ike many courts that have addressed the issue, we hold that in order to bring and exclusive alter ego action under Section 541, a bankruptcy trustee's claim should (1) be a general claim that is common to all creditors and (2) be allowed by state law." *Baillie Lumber Co. v. Thompson*, 392 F. 3d 1315, 1321 (11th Cir. 2004) (citations omitted).

In *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987 (Fla. 4th DCA 1998) the court addressed the issue of whether a release that a defendant had purchased from the trustee in bankruptcy barred the action of a creditor who had brought an alter ego claim against the defendant. The court first addressed the procedural history of the case in the bankruptcy court and noted that the bankruptcy court had not determined whether or not the debtor's estate owned the claim. The trial court had ruled that the release that the defendant purchased from the trustee barred the alter ego claim, and the plaintiff appealed.

The Fourth DCA reversed the dismissal of the claims and found that the release did not protect the defendant from the claims because the bankruptcy estate, represented by the trustee, did not own the claims and thus could not release them. The court first reviewed the history of third party claims, citing to *Kaplan* and the Eleventh Circuit's decision in *E.F. Hutton & Co. v. Hadley*, 901 F. 2d 979 (11th Cir. 1990). The court then cited to two federal appellate court decisions, *In re Ozark Restaurant Equip. Co.*, 816 F. 2d 1222 (8th Cir. 1987) and *Williams v. California 1st Bank*, 859 F. 2d 664 (9th Cir. 1988) and concluded that, under Florida law, trustees in bankruptcy do not have standing to bring alter ego claims. In so ruling, the court, citing from *Ozark* and *Williams*, stated that "'Congress's message is clear – *no* trustee, … has power under

… the Code to assert general causes of action, such as an alter ego claim, on behalf of the bankruptcy estate's creditors.'" *Seminole Boatyard*, 715 So. 2d at 990 (emphasis in original) (citations omitted). The court then held that the trustee could not have asserted the claims, and thus could not have released them. The court reasoned that "in this case, [plaintiff], and not the estate, is clearly the real party in interest in the alter ego action. Therefore, the trustee would be attempting to collect money not owed to the estate, an outcome not contemplated in the bankruptcy statutes. Second, as in *Williams*, [debtor] has no claim of its own to assert against [defendant]. Lastly, there exists a possibility of inconsistencies between the positions taken between [plaintiff] and the trustee as to any causes of action each may pursue." *Id*. at 990. The court then stated that "the trustee in this case clearly would have no standing to assert an alter ego claim on behalf of [plaintiff], therefore the general release purchased by [defendant] from the trustee does not preclude [plaintiff] from seeking retribution in the circuit court on that theory." *Id*.

Applying the teachings of *Seminole Boatyard* with the instant case leads to the inescapable conclusion that the Trustee cannot raise an alter ego claim because he does not have standing to do so. At least one district court, in reviewing an appeal from a bankruptcy court decision, has likewise ruled that a trustee in bankruptcy cannot assert an alter ego claim due to lack of standing. *See Mullin v. Dzikowski*, 257 B.R. 356, 362 (S.D. Fla. 2000) (Middlebrooks, J.). In *Mullin*, the district court *sua sponte* raised the lack of standing issue and stated that judgment should be entered in favor of the defendant on the alter ego claim "because the Trustee lacks standing to assert the claim." *Mullin*, 257 B.R. at 362. The *Mullin* court then stated that "Florida law is clear that a bankruptcy trustee lacks standing to assert such a claim because the money sought to be collected is not owed to the estate, but rather it is owed to the estate's creditors." *Mullin*, 257 B.R. at 363 (citing *Seminole Boatyard*, 715 So. 2d at 989-990).

The Trustee in this case likewise cannot assert an alter ego claim. Florida law does not allow a trustee to assert the claim, and the Bankruptcy Code does not contain any provisions that would allow the Trustee to assert the claim.  Accordingly, Count II of the Complaint must be dismissed with prejudice forthwith based on the Trustee's lack of standing to raise the claim.

### III.    Substantive Consolidation of a Non-Debtor is Completely Contradictory to the Scheme of Distribution Set Forth in 11 U.S.C. § 726 as Well as Other Provisions of the Bankruptcy Code, and Cannot be Asserted on the Facts of This Case.

Count VII of the Complaint asserts a claim to substantively consolidate Ark Capital into the Debtor's estate.  Ark Capital is not a debtor before this Court.  Ark Capital respectfully asserts that substantive consolidation of a non-debtor is not authorized under the Bankruptcy Code, at least as applied to the facts of this case, as the requested relief contradicts several statutory provisions of the Code, including Sections 301, 303 and, in an individual Chapter 7 case such as the instant one, Section 726.  The Supreme Court's recent ruling in *Law v. Siegel* precludes this Court from granting relief that contradicts these statutes and demonstrates again that the equitable powers of the Bankruptcy Court must be exercised within the confines of the Bankruptcy Code.  Accordingly, Count VII must be dismissed.

Just as with the alter ego claim the Trustee brings, there is no provision anywhere in the Bankruptcy Code that provides for the general substantive consolidation of entities.  There are two provisions that provide for consolidation in specific circumstances: 1) when appropriate after the filing of a joint husband and wife case pursuant to 11 U.S.C. § 302(b) ("After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated;" and 2) 11 U.S.C. § 1123(a)(5)(C), which states that a plan filed in a Chapter 11 case may provide for the "merger or consolidation of the debtor with one or more

persons."  Neither of those provisions apply to the instant involuntary Chapter 7 individual case, and Congress has not seen it fit to provide for the remedy anywhere else in the Code.

### A.  Eleventh Circuit Law On Substantive Consolidation.

Ark Capital recognizes that the Eleventh Circuit has recognized the ability of bankruptcy courts to substantively consolidate separate debtor entities who are already before the court. *See Eastgroup Properties,* 945 F.2d 245 (11th Cir. 1991); *FDIC v. Rieder*, 31 F. 3d 1102 (11th Cir. 1994). However, neither case involved the substantive consolidation of a non-debtor entity with the debtor.  Moreover, *Rieder* involved married debtors who filed a joint case pursuant to 11 U.S.C. § 302, which as noted above specifically authorizes consolidation of estates. Accordingly, both cases are distinguishable from the instant matter, although they may provide guidance in some respects.

The Eleventh Circuit in *Eastgroup Properties* noted that "[W]hile not specifically authorized by the Bankruptcy Code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Eastgroup Properties*, 935 F. 2d at 248. The Eleventh Circuit further noted that, because the entities to be consolidated were likely to have different debt – to asset – ratios, "consolidation 'almost invariably redistributes wealth among the creditors of the various entitles.' Thus, courts have stated that substantive consolidation should be 'used sparingly'". *Id*. (citations omitted).

*Eastgroup Properties* involved two entities that initially filed Chapter 11 cases that were ultimately converted to Chapter 7. The same individual was appointed trustee in both cases. Thus, unlike the instant case, the entities that were sought to be consolidated were already before the bankruptcy court. The Eleventh Circuit then adopted factors from other courts and held that substantive consolidation in the *Eastgroup Properties* case was appropriate. Interestingly, the Eleventh Circuit in *Eastgroup Properties* did not cite to the Supreme Court's decision in

*Sampsell v. Imperial Paper and Color Corporation*, 313 U.S. 215, 61 S. Ct. 904; 85 L. Ed. 1293 (1941) (*"Sampsell"*), which is one of several authorities this Court relied on in *S&G*.

The only other case where the Eleventh Circuit has addressed substantive consolidation is the case of *Reider*. *Reider* was a case that involved a husband and wife who filed a joint petition. Again, unlike the instant case, both debtors were already before the court, as they had filed a joint Chapter 7 petition. The Eleventh Circuit did cite *Sampsell* in *Reider* but only in its general discussion of the law of substantive consolidation. *See Reider*, 31 F. 3d at 1105 (citing *Sampsell* and stating that "[I]n 1940, the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates."). Interestingly, however, the Eleventh Circuit denied substantive consolidation in *Reider* based on the facts of that case.

### B. *Sampsell*

The Supreme Court decided *Sampsell* in 1941, as World War II was eminent and the country was emerging from the Great Depression. In *Sampsell*, the debtor, an individual, was operating as a sole proprietor. As his debts mounted, he created a corporation and transferred certain of his business assets to the new corporation. The corporation then issued shares to the debtor, his wife and son. When the debtor filed for bankruptcy, the trustee obtained a court order finding that the transfer of the to the company was fraudulent, that the creation of the company was no more than an attempt to defraud his creditors, and that "the property of the corporation was property of the bankrupt estate and that it be administered for the benefit of the creditors of the estate." *Sampsell*, 313 U.S. at 217.

After the trustee sold the goods, a creditor of the corporation asserted that its claim had priority as to the corporation's assets and sought to be paid first out of the corporation's assets. The bankruptcy referee found that the creditor had knowledge of the debtor's fraud and denied the creditor's request for priority, although the referee allowed the claim as a general unsecured

Case No. 13-40134-LMI
Adv. Pro. No. 14-01763-LMI

claim that would share with the individual debtor's other claims. The Court of Appeals for the Ninth Circuit reversed the bankruptcy referee's decision and directed that the creditor be paid out of the assets of the corporation ahead of the individual debtor's creditors, which led to the Supreme Court's decision.

The Court's discussion of the effect of the referee's order on the creditors of the corporation first noted that, absent a fraudulent transfer of assets or fraud by the corporate creditors, corporate creditors would normally be paid first from the assets of a company prior to the participation of any creditors of the shareholders. The Court then stated that in *Sampsell* there was a fraudulent transfer to the corporation, and that the creditor of the corporation had knowledge that the debtor was engaged in fraud. The Court also noted that the Statute of Elizabeth 13, the original fraudulent transfer statute, did not provide any protections to the unsecured creditors of a fraudulent transferee. *Id.* at 220-221 (citations omitted).

The Court in *Sampsell* only used the word "consolidating" one time. It did not use the word "substantive" at all. On the other hand, it used the phrase "fraudulent transfer" or some deviation of the phrase five times.

The Supreme Court has only cited *Sampsell* six times since the decision was issued, one of which was in a dissenting opinion. The Court has never expounded on its holding in *Sampsell*, has never expanded the use of substantive consolidation beyond the facts of *Sampsell*, and has only cited it once since the 1978 passage of the current Bankruptcy Code. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 126 S. Ct. 2105, 165 L. Ed. 2d 110 (2006) (citing *Sampsell* for proposition that statutes giving priority to certain creditors must be construed narrowly).

SLATKIN & REYNOLDS, P.A.
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

## C.  Post-1978 Limitations on the Bankruptcy Court's Equitable Powers.

Against this background are two Supreme Court opinions, as well as the opinion of the Eleventh Circuit in *Chemical Bank v. First Trust of N.Y.* (*In re Southeast Banking Corp.*), 156 F. 3d 1114 (11th Cir. 1998), that discuss the equitable powers of the bankruptcy courts, or, perhaps more appropriately, the limits on the equitable powers of the bankruptcy courts. Although *Chemical Bank* is not a substantive consolidation case, it describes the impact of Congress' passing in 1978 of the current Bankruptcy Code and the concurrent elimination of a significant amount of the bankruptcy court's equitable power.

*Chemical Bank* involved claims for equitable subordination. Because equitable subordination, and subordination agreements in general, involve the equality of distribution among creditors, the *Chemical Bank* analysis is helpful to the instant matter. In *Chemical Bank* the Eleventh Circuit first noted that "[T]he overriding theme of bankruptcy law, both past and present, has been the equitable distribution of the debtor's remaining assets among creditors. **Congress evidenced its continued commitment to this policy in sections 547 and 726 of the 1978 Bankruptcy Code**. See 11 U.S.C. § 726 (establishing equitable distribution among creditors)." *Chemical Bank*, 156 F. 3d at 1118 (emphasis added) (citing *Sampsell* and other cases). The *Chemical Bank* court then noted that, prior to the passage of the 1978 Bankruptcy Code, there was no provision in the bankruptcy laws regarding enforcement of subordination agreements, and that the courts had generally enforced the agreements pursuant to their equitable powers. *Id*. at 1118-1119.

The *Chemical Bank* court then noted, however, that the passage of the 1978 Bankruptcy Code had reduced the ability of the bankruptcy courts to exercise so-called equitable powers significantly. "[I]ndeed, under prior bankruptcy law, the bankruptcy courts in enjoyed extensive equitable powers and exercised these powers broadly. **The Supreme Court, however, has read**

17

the 1978 Bankruptcy Code to curtail these powers in significant ways and has explained that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.'" *Chemical Bank*, 156 F. 3d at 1122 (emphasis added) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 969, 99 L. Ed. 2d 169 (1988). In *Chemical Bank*, the Eleventh Circuit found that the passage of the Code had eliminated the ability of courts apply what was known as the "Rule of Explictness," which was an equitable principle that bankruptcy courts had applied to subordination agreements, because the Code provided that subordination agreements were to be interpreted under state law.   *Id.* at 1124 ("As a necessary consequence of this change in bankruptcy law, the Rule of Explicitness can no longer survive as the progeny of the bankruptcy courts' equity powers or as a federal canon of contract construction.") (footnote omitted).

In ruling that the equitable powers of the bankruptcy courts had been curtailed, the *Chemical Bank* court cited to the oft-repeated line that the Supreme Court utilized in *Norwest Bank*: "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."   *Norwest Bank*, 485 U.S. 197 at 206. *Norwest Bank* was a decision regarding the interpretation of the absolute priority rule that Congress codified in the 1978 Bankruptcy Code.   The petitioners advanced a number of points that the Court referred to as "equitable arguments" and rejected them, despite the fact that the petitioners relied on the equitable nature of bankruptcy proceedings in general.   Courts have cited to *Norwest Bank* for the above proposition regularly since the Court announced the decision; according to the Shepard's feature on lexis.com, the case has been cited almost 1,800 times since its publication in 1986.

The import of the Eleventh Circuit's decision in *Chemical Bank*, and the Supreme Court's admonishment in *Norwest Bank*, becomes all the more important when the Supreme

Court's most recent decision in *Law v. Siegel* is considered.  In *Law v. Siegel*, the bankruptcy court had imposed a surcharge against a debtor's exempt assets based on the debtor's litigation misconduct regarding his concealment of the nonexempt portion of his home. The debtor appealed and the district court and Court of Appeals for the Ninth Circuit affirmed. The debtor then petitioned for *certiorari* to the Supreme Court, which reversed the decision of the Ninth Circuit.  The Supreme Court stated that the surcharge that the bankruptcy court had allowed was "unauthorized if it contravened a specific provision of the Code. We conclude that it did." *Law v. Siegel*, 134 S. Ct. at 1195. The court then concluded that, because there was a specific provision of the Code dealing with exemptions and there were no provisions authorizing the bankruptcy court to ignore those provisions in order to achieve an equitable result, the court did not have the authority to provide the relief to the trustee that it did in the case. *See Id.* ("[T]he bankruptcy court thus violated § 522's expressed terms that ordered that the $75,000 protected by Law's homestead exemption be made available to pay Siegel's attorney's fees, and administrative expenses. In doing so, the court exceeded the limits of its authority under § 105(a) and its inherent powers.")

D.  **What the Above All Means to the Instant Case**.

Based on all of the foregoing, it is Ark Capital's position that a claim for substantive consolidation cannot lie on the facts that the Trustee has pled in this case.  The Trustee has not alleged that the Debtor made any fraudulent transfers to Ark Capital.  Thus, the case is distinguishable from and falls outside the parameters of *Sampsell*, and the Supreme Court has never expanded the reach of substantive consolidation of a non-debtor to any other scenario.

The strictures of the Bankruptcy Code likewise prohibit the use of substantive consolidation outside the scenario set forth in *Sampsell*.  Applying the holding of *Law v. Siegel* - that the court cannot provide an equitable remedy that contravenes a specific statutory provision

19

of the Code - along with the teaching of *Chemical Bank* - that Congress very meticulously and carefully set forth the distribution among creditors in Section 726 that bankruptcy courts must follow - leads to the conclusion that substantively consolidating a non-debtor with a debtor runs afoul of the holding in *Law v. Siegel*. *Chemical Bank* specifically noted that Congress had set forth its policy of equitable distribution by including 11 U.S.C. § 726 in the Bankruptcy Code. Thus, the Code contains a specific statute which sets forth how assets are to be distributed among creditors. Consolidating debtors, especially non-debtors whose creditors have no notice that their assets are going to be consolidated, do not have the ability to invoke any of the protections that creditors are provided in bankruptcy such as seeking relief from the automatic stay, and who will no doubt have their claims reduced by having assets that would be separate from another debtor and thus available to pay creditors pursuant to the confines of Section 726, runs contrary to Section 726's distribution scheme. This is exactly the result that the Supreme Court prohibited in *Law v. Siegel* as such a result contravenes the specific policy decisions and explicit statutory directives that Congress created when it enacted Section 726 as part of the larger Bankruptcy Code.

The above result is also consistent with recognizing that the Supreme Court has never overruled *Sampsell*.  In *Sampsell* the Court explained in detail that, under the earliest versions of the fraudulent transfer statutes, a creditor of a fraudulent transferee had no ability to seek to be paid first out of the assets that were fraudulently transferred.  Thus, if a trustee was able to recover a fraudulently transferred asset, a creditor of the transferee could quite possibly be left with little nor no means of recovery.  But this is not the case before this Court; the Trustee has not alleged any fraudulent transfers from the Debtor to Ark Capital.  Without such an allegation, the Trustee's claims must fail.

### E.  *S&G*

Ark Capital is aware that the Court found that substantive consolidation was an available remedy in *S&G*.  Of course, *S&G* was decided before *Law v. Siegel*, which Ark Capital argues changes the propriety of the bankruptcy court's ability to apply equitable remedies such as substantive consolidation.  Accordingly, Ark Capital asserts that it is, respectfully, appropriate to revisit the Court's decision in *S&G*.

A review of *S&G* shows that the Court did not discuss the application of Section 726 to the substantive consolidation of non-debtors.  Ark Capital respectfully asserts that, when the ramifications of substantive consolidation of a non-debtor are considered in light of the congressional policy behind Section 726, substantive consolidation of non-debtors in situations outside of those found in or similar to *Sampsell* contravene the specific directives of the Bankruptcy Code, and are thus contrary to the holding in *Law v. Siegel*.

Ark Capital also notes that at least one court has ruled contrary to the Court's decision in *S&G* subsequent to the Supreme Court's decision in *Law v. Siegel* and cited *Law v. Siegel* in support of its ruling.  *See In re Howland*, 2014 U.S. Bankr. LEXIS 4228 (Bankr. E.D. Ky. October 2, 2014).  In *Howland*, the court held that substantive consolidation of a non-debtor was contrary to Section 303's requirements for the filing of an involuntary petition, and cited *Law v. Siegel*'s holding that the bankruptcy courts cannot use their equitable powers to contravene a specific provision of the Code.  *Id.* at *13.  Ark Capital recognizes that the Court decided this issue in *S&G*, but respectfully asserts that the significant change in the Court's ability to fashion equitable remedies in the wake of *Law v. Siegel* gives Ark Capital reason to raise the issue for reconsideration.

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

### F. Congress Excluded a General Ability to Assert Substantive Consolidation Claims in the Bankruptcy Code, but Authorized it in Specific Situations.

As a final point, Ark Capital notes that Congress did not provide the authority to consolidate individual debtors in Chapter 7.  The only ability to consolidate debtors in a Chapter 7 case is found in Section 302(b), which as described above only applies to married debtor who filed a joint case.   Congress also provided for substantive consolidation in Chapter 11 in the context of a Chapter 11 plan as set forth in 11 U.S.C. § 1123(a)(5)(C).

Congress was obviouslyy aware that it had the authority to authorize substantive consolidation in the Bankruptcy Code.  However, Congress provided no such authority. The Supreme Court has stated that "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. U.S.*, 464 U.S. 16; 23, 104 S. Ct. 296; 78 L. Ed. 2d 17 (1983).  This principle applies to the Bankruptcy Code.  *See In re Myers*, 640 F.3d 1278 (11th Cir. 2011) (citing *Russello* and discussing difference in language between Sections 525(a) and (b)).  When this principle is applied in the context of the admonitions in *Law v. Siegel* and *Norwest Bank* regarding the equitable powers of the bankruptcy courts, the lack of a specific statutory grant to order substantive consolidation is fatal to the Trustee's claims in this case.  Accordingly, the Court does not, respectfully, have the authority to order substantive consolidation of a non-debtor under the facts of this case, and the Trustee's claims must be dismissed.

### IV. The Remaining Counts of the Plaintiff's Complaint Must be Dismissed as They Cannot Properly Plead Causes of Action

In addition to the alter ego and substantive consolidation counts, the Plaintiff also included counts for turnover, declaratory relief as to the ownership of Ark Capital, and a claim for injunctive relief. All of these claims are due to be dismissed because none of them can be

22

pled based on the facts set forth in the Complaint. Accordingly, Ark Capital is entitled to an order dismissing all three counts.

### A. Because Title to the Property the Trustee Seeks to Recover is in Dispute, the Trustee Cannot Utilize the Turnover Provisions of the Bankruptcy Code

As can be seen from the allegations of the Complaint, there are numerous factual allegations that, if taken as true, demonstrate that there is a dispute as to the ownership of the assets of Ark Capital, as well as the ownership interest in Ark Capital. Accordingly, the Trustee, by his own admissions and his allegations in the Complaint, cannot utilize the turnover provisions of the Bankruptcy Code found in Section 542 because ownership of the property is in dispute.

Numerous courts within this circuit have held that a claim for turnover does not lie when ownership of the property that the trustee seeks to recover is in dispute. "[T]urnover pursuant to 11 U.S.C. § 542 is an appropriate cause of action only where title to tangible property or money due is not in dispute." *In re Las Vegas Casino Lines, LLC*, 454 B.R. 223 (Bankr. M.D. Fla. 2011) (citing *In re Charter Co*., 913 F. 2d 1575, 1579 (11th Cir. 1990)). "[I]nstead, § 542 allows trustees and debtors in possession to recover property that is clearly property of the debtor." *In re Ven-Mar Int'l, Inc.*, 161 B.R. 191, 193 (Bankr. S.D. Fla. 1994). "[T]he purpose of the turnover provision is to provide debtors with the ability to recover property, not the ability to recover property which *may be owed* to debtors." *In re Olympia Holding Corp*., 221 B.R. 995, 998 (Bankr. M.D. Fla. 1998) (emphasis in original); "[T]he turnover provision of [sic] bankruptcy code applies only to tangible property and money due to the debtor *without dispute* which are fully matured and payable on demand." *In re Fontainebleau Law Vegas Holdings, LLC*, 417 B.R. 651, 666 (Bankr. S.D. Fla. 2009), *Aff'd sub. nom. Avenue CLO Fund Ltd. v. Bank of America*, 709 F. 3d 1072 (11th Cir. 2013) (emphasis in original) (citing to *Charter Co*., supra).

To the extent the Trustee asserts that there is no dispute as to the ownership of the property the Trustee seeks to recover from Ark, the 35 page Complaint with over 200 allegations belies any ability of the Trustee to do so. Even applying the most liberal view of the ability of a plaintiff to plead inconsistent claims or defenses pursuant to Fed.R.Civ.P. 8(d)(3), as made applicable to this adversary proceeding pursuant to Bankr.R. 7008, the Trustee's turnover claims must fail. No tortured reading of the Complaint could ever demonstrate that the Trustee is entitled to utilize the turnover provisions of Section 542 because the Trustee cannot, and will not ever be able to, plead a cause of action for turnover because of the disputes related to the ownership of the property. Accordingly, the Trustee's count for turnover, at least as directed to Ark, must fail.

### B. Ark is not a Real Party in Interest to Count I, Declaratory Relief Claim, as the Dispute is Purely Between the Trustee and Amy and Nancy Kodsi

Count I of the Complaint seeks declaratory relief that the Debtor, and not Amy and Nancy Kodsi was the owner of Ark Capital on the Petition Date, and as such, the bankruptcy estate is now the owner of Ark Capital. The Count names Ark Capital as a defendant, although, in seeking the relief that it seeks, it does not seek any true relief against Ark Capital because Ark Capital certainly cannot own itself. Thus, the Trustee cannot seek any relief against Ark Capital in Count I because the Trustee is not seeking to determine whether or not Ark Capital owns itself, which is clearly a nonexistent proposition.

Fed.R.Civ.P. 21, made applicable to this adversary proceeding pursuant to Bankr.R. 7021 states that "on motion or on its own, the court may at anytime, on just terms, add or drop a party." Although most of the cases discussing Rule 21 relate to diversity claims and joinder of defendants to defeat diversity, the premise behind Rule 21 is clear. If the Court does not believe that Ark Capital is a real party in interest, the Court may dismiss Ark Capital and let the action

proceed as to the Trustee and defendants Amy and Nancy Kodsi, who are the true parties in interest when it relates to the ownership dispute of Ark Capital. As a limited liability company, Ark Capital can only act through its members and/or managers, as the case may be. Whether Amy Kodsi or Nancy Kodsi are the owners, or the Court ultimately determines that the Trustee is the owner, does not have any bearing on the assets, property, liabilities or otherwise of Ark Capital. Ark Capital will simply take direction from whomever is determined to be its owner.

Accordingly, because the Trustee is not truly seeking any relief from Ark Capital under Count I, Ark Capital respectfully requests the Court dismiss Count I as to Ark Capital.

### C. Because the remaining portions of the Trustee's Complaint Against Ark are Due to be Dismissed, the Trustee's Injunctive Relief Claim Must Also be Dismissed

Because the Trustee has no right to any relief against Ark, the Trustee cannot seek an injunction on its own, against Ark under the law. The Eleventh Circuit has held that "[A]ny motions or suits for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. 'There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must first be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).'" *Alabama v. Unites States Army Corp. of Eng'rs*, 424 F. 3d 1117, 1127 (11th Cir. 2005) (citing *Klay v. United Health Group, Inc*., 376 F. 3d 1092, 1097 (11th Cir. 2004). Because all of the claims the Trustee has asserted are due to be dismissed, the injunctive relief claim must also fail. Simply put, without any other basis to recover from Ark, the Trustee has no basis to seek any sort of injunctive relief, be it preliminary or otherwise.

## Conclusion

The Trustee's claims against Ark Capital are all due to be dismissed. The Trustee is not entitled to bring claims under the theories of alter ego, substantive consolidation, or turnover, and the Trustee's declaratory action should not be directed against Ark Capital because the true parties in interest to the ownership dispute are Amy and Nancy Kodsi, and the Trustee. Because all of the other claims that the Trustee has asserted are due to be dismissed, the Trustee's injunctive relief claim is likewise due to be dismissed. Ark Capital respectfully requests the Court enter an order granting same.

WHEREFORE, for the reasons stated herein, Ark Capital respectfully requests the Court grant this Motion, dismiss the Trustee's claims against Ark Capital with prejudice, as well as grant any further relief the Court deems proper under the circumstances.

I hereby certify that I am admitted to the Bar of the United States District Court, and that I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated this 18th day of November, 2014.

SLATKIN & REYNOLDS, P.A.
Attorneys for Ark Capital
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
rreynolds@slatkinreynolds.com

By: /s/ Robert F. Reynolds
    ROBERT F. REYNOLDS
    Fla. Bar No. 174823

Case No. 13-40134-LMI
Adv. Pro. No. 14-01763-LMI

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF electronic noticing system to Daniel N. Gonzalez, Esq., dgonzalez@melandrussin.com, ltannenbaum@melandrussin.com and all other parties entitled to receive notice via the Court's CM/ECF noticing system on this 18th day of November, 2014.

         /s/ Robert F. Reynolds
         ROBERT F. REYNOLDS

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880