UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ISAAC KODSI,

Case No. 13-40134-LMI
Chapter 7

      Debtor.

_____/

BARRY E. MUKAMAL, CHAPTER 7
TRUSTEE FOR THE ESTATE OF ISAAC
KODSI,

Adversary No. 14-01763-LMI

      Plaintiff,

v.

ARK CAPITAL GROUP, LLC, AMY
KODSI, AND NANCY KODSI,

      Defendants.

_____/

**TRUSTEE'S RESPONSE TO ARK CAPITAL GROUP, LLC'S MOTION TO DISMISS
TRUSTEE'S COMPLAINT WITH PREJUDICE, MOTION TO STRIKE
AND MOTION FOR MORE DEFINITE STATEMENT**

Barry E. Mukamal, the Chapter 7 Trustee (the *"Trustee"*) for the bankruptcy estate (the

*"Estate"*) of Isaac Kodsi (the *"Debtor"*), by and through his undersigned counsel, responds to

Ark Capital Group, LLC's (*"Ark Capital"*), Motion to Dismiss Trustee's Complaint (the

*"Complaint"*) with Prejudice, Motion to Strike and Motion for a More Definite Statement [ECF

Nos. 13 & 14] (the *"Motion"*), and the Joinder of Amy Kodsi and Nancy Kodsi to the Motion

[ECF No.'s 10 and 11], and states as follows:

## INTRODUCTION

"[W]hile the means used to conceal assets may be as varied as the creative mind of the devious debtor…it remains the constant duty of this [c]ourt to pierce the implausible and recognize that which is true.[1]"

The Debtor is an individual who has received anywhere from $40,000 to $85,000 per month over the last four years to support his lifestyle. Indeed, the Debtor is not the typical individual Chapter 7 debtor. The Debtor lives in a $14,000,000 home, sends his children to the most expensive private schools in Dade County, and has not filed a tax return since 2011. And how is the Debtor able to do this despite having millions of dollars of debt and claiming to own nothing other than his home? By concealing his assets, such as Ark Capital, through a labyrinth of companies ostensibly not owned by him, or diverting otherwise non-exempt monies to his wife, or accounts owned by him and his wife as tenancy by the entireties. It is undisputed that the vast majority of funds that the Debtor receives on a monthly basis come from companies allegedly not owned by him, or from his mother, Amy Kodsi. One such company is the Defendant in the instant case, Ark Capital. Here, the implausible is that the Debtor can support his lifestyle through companies not owned by him, such as Ark Capital, while owing millions of dollars to his creditors. Common sense tells us, and the truth is, Ark Capital is the Debtor's alter ego. Therefore its assets should come into this estate.

Through its Motion, Ark Capital seeks to dismiss the following counts from the Trustee's Complaint: Count I – Declaratory Judgment Pursuant to 28 U.S.C. § 2201; Count II – Alter Ego; Count III – Turnover Pursuant to 11 U.S.C. § 542; Count V – Injunction and Other Equitable Relief; and Count VII – Substantive Consolidation  Recognizing that the Trustee has properly

---

[1] *In re Santaella,* 298 B.R. 793, 801 (Bankr. S.D.Fla. 2002), citing to *In re Lawrence,* 227 B.R. 907 (Bankr. S.D.Fla. 1998)(recognizing court's duty to exercise its common sense).

laid out the elements for each of the foregoing counts in his Complaint, Ark Capital does not seek to dismiss any of those counts for failure to allege the proper elements for each cause of action.  Rather, Ark Capital argues in its Motion that the Trustee lacks standing to bring an alter-ego action, that Congress excluded from the Bankruptcy Code a general ability to assert substantive consolidation claims, and that the Trustee's turnover count must fail because there is a dispute as to who is the true owner of Ark Capital.  As will be discussed below, each of Ark Capital's arguments in its Motion lack merit, and therefore its Motion should be denied in its entirety.

### I.    The Complaint should not be dismissed as a shotgun pleading.

The Complaint is not a shotgun pleading. Ordinarily, a shotgun pleading is a complaint with "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir.2002); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.2001) (shotgun pleading where "[e]ach count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'—which comprises 146 numbered paragraphs— while also incorporating the allegations of any count or counts that precede it").

Incorporation, itself, is not the problem, as "a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). But if a plaintiff "indiscriminately incorporates assertions from one count to another," the complaint can become incomprehensible and "prevent the [defendant] from reasonably being able to prepare a[n answer] or simply make the burden of doing so more difficult." 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1326 (3d ed.2004).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Here, the Complaint is not a shotgun pleading, as the allegations in the *counts* are <u>not</u> integrated into the other counts, unlike most of the cases cited by Ark Capital in its two-page string cite.[2] *See Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("each count also adopts the allegations of all preceding counts"); *Liebman v. Deutsche Bank Nat. Trust Co.*, 462 F. App'x 876, 879 (11th Cir. 2012) ("A shotgun pleading is a pleading that incorporates every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."); *Wagner v. First Horizon Pharm. Corp.*, 464 F. 3d 1273, 1279 (11th Cir. 2006) (same).

Even the other cases cited by Ark Capital do not support Ark Capital's definition of a shotgun pleading.  The complaint in *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir.1991) earned the shotgun moniker by "incorporating by reference four volumes of evidentiary exhibits." The complaint in *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997), "offered vague and conclusory factual allegations in an effort to support a multiplicity of . . . claims leveled against 15 defendants." And in *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998), the discussion of shotgun pleadings is pure dicta.

But even if the Complaint were a shotgun pleading, dismissal or repleader is unwarranted. "The central problem with [shotgun] pleadings is that it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief,' thus thwarting the opposing party's ability to frame a responsive pleading. *T-12 Entm't, LLC v. Young Kings Enterprises, Inc.*, --F. Supp. 2d.-- No. 1:14-CV-841-TCB, 2014 WL 3893022, at *3 (N.D. Ga. Aug. 11, 2014); (quoting *Anderson,* 77 F.3d at 366). Here there is no such concern. Indeed, Ark

---

[2] A true shotgun pleading is one where, for instance, there are 30 general factual allegations;  Count I ( allegations 31-40) incorporates 1-30; Count II (allegations 41-50) incorporates 1-40; and Count III (allegations 51-60) incorporates 1-50. That is not the case here.

Capital was able to zero in on the issues and frame a 27-page responsive pleading. As the *T-12* court held:

> Almost sixty years ago, the former Fifth Circuit explained that the Federal Rules "were not adopted to set traps and pitfalls by way of technicalities for unwary litigants"; thus, "substantial compliance with the rules is sufficient." *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir.1955). Nothing in the numerous Eleventh Circuit cases excoriating shotgun pleadings is to the contrary. Indeed, complaints "must be construed so as to do justice." FED.R.CIV.P. 8(e). The Court thus declines to make the avoidance of any characteristic of a shotgun complaint a de facto pleading requirement.

*Id.* at *4-*5.

Here the Court and Ark Capital can easily ascertain the allegations at issue. Just as the complaint in *T-12*, the Complaint sets forth headings such that the allegations (and how they fit together) make sense and are easily understandable. The crux of the Complaint is that Isaac Kodsi, facing crushing debt following the real estate crash, engineered a scheme by which Ark Capital, a company he owned, was shielded from his creditors by (allegedly) transferring the membership interests in the company to his mother and sister, while maintaining his control and beneficial (if not legal) ownership of Ark Capital. All the counts in the Complaint flow from that. Thus the Trustee has to plead, and has pleaded, the surrounding allegations known to him, so that from the pleaded facts, when proven, this Court can draw the only reasonable inference--that this scheme was perpetrated to defraud the Debtor's creditors. Accordingly, Ark Capital's shotgun pleading argument must fail.

## II. Under the *Erie* doctrine, a separate state law claim for alter ego cannot be dismissed just because this is a federal court.

In Section II.B. of the Motion, Ark Capital asserts that "'Alter Ego' Cannot be Pled as an Independent Cause of Action in Federal Court." Ark Capital asserts that the Complaint must be dismissed or repleaded because "[u]nder federal law, alter ego is a remedy, not a cause of action,

and thus cannot be pleaded as an independent cause of action." *See Motion* at p. 9. Ark Capital fails to understand the difference between the ability to state a cause of action under federal law, and the ability to litigate a state-law cause of action in a federal court. It follows that the alter ego count should not be dismissed.

Assuming it were true that there is no federal cause of action for alter ego, the lack of a federal cause of action has no effect on the Trustee's ability bring a state-law alter-ego claim against Ark Capital. In quoting *Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014) in its Motion, Ark Capital admits that "Florida courts permit alter ego allegations to be pled as a distinct cause of action." Indeed, the Florida Supreme Court has held unequivocally that "allegations of mere instrumentality and improper conduct clearly state a cause of action." *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla.1984)

It is beyond question that a state law claim may be brought in the bankruptcy court (by reference from a district court), so long as the matter is related to a bankruptcy proceeding. 28 U.S.C. § 1334(b); *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000). The Trustee's alter-ego claim is undeniably related to the bankruptcy (though the Trustee believes it arises in the bankruptcy). Ark Capital would have this Court apply federal common law to the Trustee's state law claim, but such a procedure has been proscribed since 1938, when the Supreme Court in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) overruled *Swift v. Tyson,* 41 U.S. 1 (1842).

Indeed, since *Erie*,[3] in applying state law in diversity cases, "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The question, then, is whether the existence of an independent cause of action for alter-ego is a

---

[3] The *Erie* analysis applies equally to bankruptcy jurisdiction under section 1334. *See generally Meininger v. Fla. Pediatric Assoc. LLC (In re Johnson)*, 453 B.R. 433 (Bankr. M.D. Fla. 2011).

procedural or substantive rule. The federal mandate that alter-ego be pleaded not as an independent cause of action is a decisional law; i.e. it is derived from no explicit federal statute or Rule of Civil Procedure.

> If a federal statute or Rule of Civil Procedure does not sufficiently cover the disputed issue, *Hanna* requires that the district court consider the applicability of federal judge-made law. This analysis requires the court to evaluate whether application of federal judge-made law would disserve the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws. If applying the relevant judge-made law would denigrate these policies, the district court should apply state law.

*Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 917 (11th Cir. 1989) (citations and quotations omitted). Here, although the Trustee has not engaged in forum shopping, the application of federal decisional law would result in "inequitable administration of the laws." Such is enough to require the application of state law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980) (holding that an inequitable administration exists where "in the absence of a controlling federal rule, an action based on state law . . . would be barred in the state courts [but] should proceed through litigation to judgment in federal court").

That is exactly the case here. Repleading the alter-ego cause of action as a theory of liability under one of the other causes of action is not a mere procedural step (though it may appear to be). Instead, forcing the Trustee to do so would severely limit the Trustee's rights and remedies. As currently pleaded, the Trustee could win on his alter-ego count (and bring the Ark Capital assets into the estate), even if he loses on his remaining 13 counts. But if forced to replead, the Trustee would be forced to prevail on at least one of his remaining counts in order for the Court to reach the alter ego issue. This makes no sense. If Ark Capital is the Debtor's alter ego, then its assets and liabilities *should* be Estate assets and liabilities, irrespective of whether (for instance) the Trustee prevails on a fraudulent transfer count.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

It is noteworthy that *Raimbeault* and the cases on which it relies were not bankruptcy cases. In those cases, the plaintiffs had no judgment against the defendants. Thus, forcing the plaintiffs to replead alter ego as a theory of liability against a third party as part of their underlying causes of actions could not have prejudiced them in any way.

As an example, in *Raimbeault*, 2014 WL at *1, the Plaintiff brought actions for "damages based on non-payment owed under a note, against Accurate; [and] alter ego, against 1848 Capital."[4] In its alter ego claim, the plaintiff "asserted a separate claim for 'alter ego' in order to render 1848 Capital directly liable for the actions of Accurate. . . ." *Id.* at *8.

Unlike here, in dismissing the Plaintiff's alter ego claim, the *Raimbeault* court did not affect the *Raimbeault* plaintiff's substantive rights. This is because (regardless) the *Raimbeault* plaintiff would be required to prove two things to collect from 1848 Capital: (1) that it was a creditor of Accurate (by prevailing on the note count); and (2) that 1848 Capital was an alter ego of Accurate.

But the Trustee is in a different situation. By virtue of 11 U.S.C. 544(a), he is *already* treated as a judgment creditor of Isaac Kodsi. It follows that he cannot plead a claim against Isaac Kodsi, with a request for alter ego liability against Ark Capital, as *Raimbeault* and similar cases command. As such, applying the *Raimbeault* rule would divest the Trustee of a cause of action, and is *per se* "inequitable administration" under the *Hanna* test. Thus, such an application of the *Raimbeault* rule is substantive, and is proscribed by the *Erie* doctrine.[5]

---

[4] For illustrative purposes, the Trustee omits discussion of the other causes of action brought by the plaintiff in that case.

[5] The Eleventh Circuit has held that a creditor's alter ego action is property of the estate, without suggesting any effect on an underlying claim. *Baillie Lumber Co. v. Thompson (In re Icarus Holding LLC)*, 391 F. 3d 1315, 1321 (11th Cir. 2004). While the separate pleading of an alter ego action was not at issue in *Icarus*, its holding that a creditor pursuing an alter ego claim is stayed by the automatic stay is irreconcilable with treating alter ego as only a remedy in bankruptcy court. That is, the alter ego claim would be stayed, but the trustee could not bring it. That cannot be true.

### III.    The Trustee has standing to pursue the alter ego claim.

In Section II.B. of the Motion, Ark Capital urges the court to dismiss the alter ego count because it alleges that the Trustee lacks standing, despite the fact that trustees in this circuit and district regularly bring such claims. Ark Capital asserts that the "Bankruptcy Code contains no statutory provision that authorizes a trustee to file an action seeking determination that a non-debtor company is the alter ego of a debtor. Thus, the only plausible grounds on which a trustee could assert an alter ego claim would be if the debtor owned an alter ego claim that *became* property of the estate pursuant to 11 U.S.C. § 541." *See* Motion at page 10.  Both are wrong.

### a.    Alter ego is a cause of action created by the Bankruptcy Code under 11 U.S.C. § 541.

The Trustee agrees with those Courts that hold a cause of action for an alter ego determination does not *become* property of the Estate under section 541, but is actually *created* by section 541. In an extremely similar case, in passing on whether the trustee's alter ego claim stems from the bankruptcy, for *Stern* purposes, Judge Kimball observed the following:

> Count I seeks a declaratory judgment that all of the defendants "are owned by the Debtor and/or are his alter ego, that they and their assets are accordingly property of the estate under 11 U.S.C. § 541." The plaintiff seeks an order determining what is property of the estate and thus subject to administration in the Debtor's chapter 7 case. The determination of property of the estate is a matter [in which] the Court is asked to determine the scope of 11 U.S.C. § 541. That the determination of what is and is not included in property of the estate requires the Court to consider state law, here under a theory of alter ego, does not cause the inquiry to lose its nature as [a proceeding under Section 541]. As the Supreme Court has recognized, this Court routinely considers state law issues in ruling on property rights in bankruptcy. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Here, it is the nature of the allegations in the complaint that bring the matter within the ambit of 11 U.S.C. § 541. The Court is asked to rule that property held in the name of the defendants is and always has been beneficially owned by the Debtor.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

*Bakst v. Smokemist, Inc. (In re Gladstone)*, 513 B.R. 149, 156-57 (Bankr. S.D. Fla. 2014). Unlike Ark Capital's assertion that an alter ego claim could only exist if the Debtor previously owned it and it *became* property of the Estate upon the filing of the petition, Judge Kimball recognized that in alter ego claims such as the one brought by the Trustee

> the plaintiff *does not pursue* typical *preexisting claims* of the estate against the defendants. To the contrary, the plaintiff asks the Court to recognize that the defendants are not truly separate entities, that they have no purpose other than to hide assets held entirely for the Debtor's benefit. The gravamen of the complaint is a request that the Court recognize that all assets held in the names of the various defendants are actually assets of the Debtor.

*Id*. at 159 (emphasis added to show that the determination that the defendant's assets are not property of the estate need not be, and is not, a preexisting claim held by the debtor prepetition); *see also Freehling v. Nielson, (In re F & C Services, Inc.)*, 44 B.R. 863, 868 (Bankr. S.D.Fla. 1984) (in determining what is property of the estate for turnover purposes under § 542, the court must "disregard corporate entities where a corporation is no more than the alter ego of the bankrupt so as to treat the bankrupt's trustee as titleholder of the alter ego's property"); *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 745 (Bankr. W.D. La. 2008) (the estate "has an equitable interest in the assets of the alter ego. Therefore, the trustee does not bring this as a chose in action on which the debtor-corporation could have sued outside of bankruptcy; he brings it simply to establish the identity of the alter egos with the corporation in order to determine what are the assets of the estate.") Because the cause of action exists independently under section 541, it is axiomatic that the Trustee (and only the Trustee) has standing to bring the alter ego claim.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**b.**    **Even if there were no independent cause of action for alter ego created by Section 541 of the Code, the Trustee may still bring the cause of action as a state law claim owned by the Estate under section 541 or exercisable by a trustee under section 544(a).**

Strangely, Ark Capital cites and quotes the one case which is mandatory authority upon this Court, *Icarus*, 391 F. 3d at 1321, which answers the question at issue, yet Ark Capital ignores *Icarus*'s conclusion. For the Trustee to have standing to bring an alter ego claim, it must (1) be a general claim that is common to all creditors and (2) be allowed by state law."

In *Icarus*, Baillee Lumber brought a post-petition alter ego action against the Debtor's former principal. *Id.* at 1318. The debtor-in-possession also brought an alter ego cause of action against the former principal, and sought a determination that Bailee Lumber's claim was stayed. *Id.* Following an appeal and a certification to the Georgia Supreme Court, the Eleventh Circuit determined that Bailee Lumber's alter ego claim "involves a general claim common to all creditors . . . [which] is allowed under state law." *Baillie Lumber Co. v. Thompson (In re Icarus Holding LLC)* 413 F.3d 1293, 1295 (11th Cir. 2005). Thus, the Eleventh Circuit concluded that "the alter ego action . . . is property of the bankruptcy estate and is subject to an automatic stay." *Id.*

Just as in *Icarus,* the Trustee asserts a general claim, as liability extends "to all creditors of the [debtor] without regard to the personal dealings between such [defendant] and such creditors." Under Florida law, the Trustee has not, and need not allege a particularized harm to any individual creditor, as would make the alter ego claim 'not general.' *Estudios, Proyectos e Inversiones de Centro Am., S.A. (EPICA) v. Swiss Bank Corp. (Overseas) S.A.*, 507 So. 2d 1119, 1120-21 (Fla. 3d DCA 1987) (Upon proof that the defendant "organized or used the corporation to deceive or defraud his personal *creditors*, the separate corporate existence will be disregarded

and the corporation and the shareholder will be treated as one and the same)[6] (emphasis added to note that the injury flows to the creditors, not a specific creditor).

Indeed, if there were any question, to the Trustee's knowledge the only courts interpreting Florida law on this issue since *Icarus* have indicated that alter ego claims are general causes of action permissible under state law.  *See In re Xenerga, Inc.*, 449 B.R. 594 (Bankr. M.D. Fla. 2011); *see also Salkin v. Chira (In re Chira)*, 353 B.R. 693, 736 (Bankr. S.D. Fla. 2006); *see also In re C.D. Jones & Co., Inc.*, 482 B.R. 449, 455 (Bankr. N.D. Fla. 2012). Ark Capital does not cite a single case decided since *Icarus* in support of its assertion that the Trustee lacks standing. Instead, Ark Capital chooses to rely on the pre-*Icarus* decision of *Seminole Boatyard*, 715 So. 2d at 987, and its pre-*Icarus* progeny in *Mullin v. Dzikowski*, 257 B.R. 356 (S.D. Fla. 2000), both of which rely on *Seminole Boatyard*'s misinterpretation of the Eleventh Circuit's holding in *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979 (11th Cir. 1990).

*EF Hutton* concerned "whether or not a bankruptcy trustee can assert the claims of customer creditors, who have paid the bankrupt in full for securities purchased for them by the bankrupt." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 980 (11th Cir. 1990). But the "trustee . . . conceded that [the] case concern[ed] only those fully paid GIC customer securities sold in July and September. *Id.* at 985. Thus, the Eleventh Circuit "held that a trustee had no standing to assert claims on behalf of specific creditors of a debtor." *In re Flagship Healthcare, Inc.*, 269 B.R. 721, 727 (Bankr. S.D. Fla. 2001) (interpreting *EF Hutton*).

*Seminole Boatyard,* in turn, considered *EF Hutton*'s inapposite determination that the specific claims were not general, and then agreed with the holdings in *Ozark Equip. Co.*, 816

---

[6] "It makes no difference [if the defendant] himself was not a shareholder of the corporation, because if a corporate officer who is in control of a corporation personally utilizes its assets for payment of personal obligations and generally treats the corporation as a sham, he can be liable on an alter ego theory. *Walton v. Tomax Corp.*, 632 So.2d 178, 181 n. 2 (Fla. 5th DCA 1994); *Bermil Corp. v. Sawyer*, 353 So.2d 579 (Fla. 3d DCA 1977); *Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987, 990 (Fla. 4th DCA 1998) (holding a president, rather than a shareholder, to be the alter ego);

F.2d 1222, 1228 (8th Cir. 1987) and *Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir.1988), that no trustee has standing to bring alter ego claims.[7] But Ark Capital ignores that the *Williams* holding, that no trustee has standing to bring alter ego claims, was expressly rejected in *Icarus*. Ark Capital goes on to cite *Mullin*, 257 B.R. at 362 (S.D. Fla. 2000), a case in which the court, in dicta, held that the case could be dismissed for lack of standing, even though the parties had not briefed the issue.

In *Mullin*, which was likewise decided after *Icarus*, the trustee sought to hold the debtor's principal liable for the debtor's liabilities under an alter-ego theory. *Id.* at 362-63. The *Mullin* court *sua sponte* decided that the trustee lacked standing based on what the court described as *EF Hutton*'s holding that "the Bankruptcy Code does not authorize a trustee to collect money owed to a creditor of the estate but not to the estate itself." *Id.* But, as described above, there is a distinction between a claim belonging to a subset of creditors (such as in *EF Hutton*) and a claim belonging to all creditors (such as here and in *Icarus*). The *Mullin* court fails to acknowledge that distinction, and thus it is inconsistent with the binding authority in *Icarus*.

The cases since *Icarus* demonstrate that the Trustee has standing to bring the alter ego claim. For instance, in *Chira,* 353 B.R. at 735, Judge Olson actually cited to both *Mullin* and *Seminole Boatyard,* but concluded (by citing *Icarus*) that a "Trustee may bring an action, frequently called a Trustee's 'reverse piercing' action, to draw the assets of the Debtor's mere instrumentality into the Debtor's estate." *Id.*at 736. In *Xenerga*, 449 B.R. at 599, Judge Jennemann held that "Florida law would allow a corporation to pierce its own corporate veil in

---

[7] The Trustee acknowledges that the *Seminole Boatyard* court noted that the third element of alter ego was "(3) the fraudulent or improper use of the corporate form caused injury to the claimant," which the *Seminole Boatyard* court appeared to attribute to *Dania Jai–Alai,* 450 So.2d. The Trustee acknowledges that such an element *could* be relevant to the analysis of whether the claim was particular to an individual creditor. But that element appears nowhere in *Dania Jai-Alai,* nor any of the Florida Supreme Court decisions cited therein. *See id.* at 1121 (reiterating the test under *Advertects, Inc. v. Sawyer Industries, Inc.,* 84 So.2d 21, 24 (Fla.1955) that (1) the corporation is in actuality the alter ego of the stockholder (i.e. that the shareholder dominated and controlled the corporation); and (2) the existence of some improper act, such as conversion or depletion of corporate assets.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

an alter ego action," and thus an alter ego action could be exercised by the estate. *See also CD Jones*, 482 B.R. at 449 (relying and *Xenerga* and concluding the alter-ego claim was included in the estate).

Based on the foregoing, none of the cases cited by Ark Capital support its argument that the Trustee lacks standing. A Florida alter ego action is clearly a general claim which inures to the benefit of all creditors. Since *Icarus,* courts have continued to recognize that trustees may bring alter ego claims. Thus, under the *Icarus* test, the Trustee has standing.[8]

**IV.    The Trustee states a cause of action for substantive consolidation of a non-debtor.**

Ark Capital argues that substantive consolidation is not permissible under the facts as alleged in the Complaint or that a non-debtor entity cannot be substantively consolidated, despite this Court's previously holding in *Kapila v. S & G Fin. Servs., LLC (In re S & G Fin. Servs. of S. Florida, Inc.)*, 451 B.R. 573, 580 (Bankr. S.D. Fla. 2011). Ark Capital argues that Congress created only two sections in the Bankruptcy Code which provide for substantive consolidation: (1) the substantive consolidation of married individual debtors' estates in chapter 7, and (2) the "merger or consolidation of the debtor with one or more persons" pursuant to a plan of reorganization. Thus, Ark Capital's argument goes, any use of substantive consolidation other than the two enumerated examples under the bankruptcy court's equitable powers is impermissible under *Law v. Siegel*, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014).

---

[8] The Trustee also believes that, in addition to the two distinct section 541 analyses which allow the Trustee to bring Count II of the Complaint, the Trustee has standing under 11 U.S.C. § 544(a)(1) to bring the alter ego claim, since that section vests the Trustee with all powers of a hypothetical lien creditor at state law. *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987).  Thus, the Trustee believes section 544(a)(1) to unambiguously vest the Trustee with an alternative source of standing.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**a.      Even if *Law v. Siegel* mandated a different conclusion, the Court would still be obligated to follow mandatory Eleventh Circuit authority in *Eastgroup*.**

Mandatory authority dictates that this argument must be rejected. The Eleventh Circuit has stated unequivocally that even where "not specifically authorized by the bankruptcy code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Eastgroup Properties v. S. Motel Ass'n, Ltd.,* 935 F.2d 245, 248 (11th Cir. 1991). But since *Siegel* had absolutely nothing to do substantive consolidation,[9] courts in the Eleventh Circuit would be bound by *Eastgroup* even if *Siegel* abrogated its reasoning (which, of course, it did not). *See Atl. Sounding Co. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007) ("that the reasoning of an intervening high court decision is at odds with that of our prior decision is no basis for a panel to depart from our prior decision. As we have stated, obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing") (internal citations and quotations omitted).

**b.      Nothing in *Law v. Siegel* affects the Trustee's entitlement to substantive consolidation of Ark Capital.**

In the 1940s, "the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates." *Reider v. Fed. Deposit Ins. Corp. (In  re Reider)*, 31 F.3d 1102, 1005 (11th Cir. 1994). That case, *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 218 (1941), involved the consolidation of the assets of a non-debtor corporation dominated by the debtor, just as Ark Capital is dominated by Isaac Kodsi. In describing *Sampsell,* this Court noted:

---

[9] In Siegel, the issue was "whether a bankruptcy court nonetheless may order that a debtor's exempt assets be used to pay administrative expenses incurred as a result of the debtor's misconduct." *Siegel*, 134 S. Ct. at 1192. Accordingly, the issue of whether substantive consolidation of a non-debtor is permissible was 'not before the Court.'

> In *Sampsell*, the Supreme Court held that a bankruptcy referee properly ruled that the property of a non-debtor corporation was property of the bankruptcy estate of its debtor principal shareholder. The Court noted that "[m]ere legal paraphernalia will not suffice to transform into a substantial adverse claimant a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket." Id. at 218, 61 S.Ct. 904.

*S&G,* 451 B.R. at 580.

Based on *Sampsell,* this Court held that "it is well within this Court's equitable powers to allow substantive consolidation of entities under appropriate circumstances, whether or not all of those entities are debtors in bankruptcy." *Id.* at 582.[10] In doing so, this Court rejected the holding of *In re Circle Land & Cattle Corp.*, 213 B.R. 870 (Bankr. D. Kan. 1997) that "the application of the substantive consolidation remedy over non-debtors as an impermissible use of the court's equitable power to take jurisdiction over a non-debtor without express statutory authority to do so." *Id.* In short, this Court rejected the very argument Ark Capital makes that substantive consolidation is inappropriate under 11 U.S.C. § 105 absent an independent statute so authorizing.

Ark Capital would have this Court hold that everything has changed post-*Siegel.* Yet *Siegel*'s holding is nothing new. *Siegel* itself recognizes this in stating that it was already "hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Siegel*, 134 S. Ct. at 1194. Long before *S&G,* the Supreme Court had held that the inherent general and equitable powers of a bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The same was

---

[10] The majority of bankruptcy courts in this circuit agree. *See e.g., Matter of Munford, Inc.*, 115 B.R. 390, (Bankr. N.D. Ga.  1990) (substantively consolidating nondebtor's estate with debtor's); *see also In re Alico Mining, Inc.*, 278 B.R. 586 (Bankr. M.D. Fla. 2002)(bankruptcy court has authority to substantively consolidate debtor with nondebtor entity).

true even in the days of *Sampsell*.  *See SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) ("A bankruptcy court ... is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act"). Yet there was no more a specific section authorizing substantive consolidation of a non-debtor under the Bankruptcy Act in 1941 than there is under the Bankruptcy Code in 2014, yet the Supreme Court confirmed its propriety in *Sampsell* regardless.

Ark Capital relies on *In re Howland*, 518 B.R. 408, 414 (Bankr. E.D. Ky. 2014), for its assertion that *Law v. Siegel* has changed. While *Howland* barely mentions *Siegel*, it is neither mandatory authority nor persuasive. To the extent that courts post-*Siegel* interpret that they are unable to enter orders and take actions routinely available to bankruptcy courts, such as substantive consolidation, *Otero Mills* Injunctions, etc., such concern is likely as unwarranted as those courts who concluded they could no longer enter sale orders post-*Stern*. *See In re Teleservices Grp., Inc.*, 456 B.R. 318 (Bankr. W.D. Mich. 2011).

In *Siegel*, "the Bankruptcy Court ruled that the Trustee could surcharge debtor's homestead exemption to pay the Trustee's attorneys' fees based on the Debtor's conduct . . . The Supreme Court, reversed, and held that the broad authority of the bankruptcy court to carry out the provisions of the Bankruptcy Code and inherent power to sanction abusive litigation practices did not extend to surcharging the exemption, since the surcharge contravened the specific prohibition under 11 U.S.C. § 522(k) that the exemption was not liable for payment of the attorney fees as an administrative expense." *In re Ginzburg*, 517 B.R. 175, 179-80 (Bankr. C.D. Cal. 2014) (discussing *Siegel*).

Such a situation, where the action taken under § 105 is actually prohibited by another code section, is very different from this case, where the Trustee seeks an order which is not

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

prohibited under the Code. In *Official Committee of Unsecured Creditors v. Newkey Group LLC (In re SGK Ventures, LLC)*, -- B.R. --, No. 11 B 33413, 2014 WL 5782994, at *3 (Bankr. N.D. Ill. Nov. 6, 2014), the court considered whether long-standing Fourth Circuit precedent allowing for derivative standing to bring avoidance actions was abrogated by *Siegel*. In holding that it was not, the *SGK* court held:

> *Law v. Siegel* is similarly not on point. It holds that § 105(a) of the Bankruptcy Code, though granting courts authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," does not allow courts to take action expressly prohibited by the Code. Section 522(k) of the Code expressly prohibits an award of administrative expenses from a debtor's exempt property, and *Law* held that a surcharge of exempt property to pay such expenses was improper. *Law*, 134 S.Ct. at 1195 ("[T]he Bankruptcy Court's 'surcharge' was unauthorized if it contravened a specific provision of the Code. We conclude that it did."). There is no provision of the Bankruptcy Code prohibiting a grant of derivative trustee standing, and so *Law* has no bearing here.

*Id.* Just as in *SGK*, no provision in the Bankruptcy Code prohibits substantive consolidation of a non-debtor. As such, *Law v. Siegel* is inapplicable, and the Court should follow its holding in *S&G*.

Finally, interspersed throughout the substantive consolidation section of the Motion, Ark Capital suggests substantive consolidation is not appropriate because there are no allegations of fraudulent transfers from the Debtor to Ark Capital, because the *Sampsell* Court used the term 'fraudulent transfer' five times, while mentioning 'consolidation' only once. Ark Capital cites no cases that actually so hold.

Indeed, to prevail on an alter ego action in the Eleventh Circuit: "(1) the movant must show that there is substantial identity between the entities to be consolidated; and (2) that consolidation is necessary to avoid some harm or to realize some benefit." *S&G,* 451 B.R. at 583 (citing *Eastgroup Properties*, 935 F.2d at 249). Notably, "a substantive consolidation claim 'does

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

not require a finding of fraud or an intent to hinder and delay creditors.'" *Id.* (quoting *Alico Mining*, 278 B.R. at 588). Thus, there is no requirement to plead fraudulent transfers in order to state a claim for substantive consolidation. It follows that substantive consolidation is appropriate.

**V.      The turnover claim is permissible in conjunction with the declaratory judgment count.**

The Trustee generally agrees with Ark Capital that ordinarily, "a claim for turnover does not lie when ownership of the property that the trustee seeks to recover is in dispute." *Motion*, p. 23. Here, a turnover claim remains appropriate because it is brought in conjunction with a declaratory judgment action.  "While it is true that a turnover action may not be appropriate if the right is disputed, that principle is not applicable [w]here the turnover claim is ancillary relief to the declaratory judgment claim." *Olsen v. Reuter (In re Reuter)*, 499 B.R. 655, 669 (Bankr. W.D. Mo. 2013). If there is a dispute as to ownership of the property, "to establish a prima facie case for turnover, the Trustee had to prove that the property in question was owned by Debtor." *In re Santaella,* 298 B.R. 793, 800 (Bankr. S.D.Fla. 2003). Courts commonly grant declaratory and turnover relief together when title to the property to be turned over is in dispute. *See Pry v. Maxim Global, Inc. (In re Maxim Truck Co., Inc)*., 415 B.R. 346 (Bankr. S.D. Ind. 2009); *Nickless v. McGrail & McGrail (In re Dooley)*, 399 B.R. 340 (Bankr. D. Mass. 2009).

Moreover, even absent a declaratory judgment action, a dispute must be *bona fide* in order to make turnover impermissible. *Giuliano v. Fairfield Health Care Centers Limited P'ship (In re Lexington Healthcare Grp., Inc.)*, 363 B.R. 713, 716 (Bankr.D.Del.2007). Here, the Trustee alleges that it is indisputable that the Debtor was the 100% shareholder of Ark Capital in 2009, and it is likewise indisputable that no signed writing exists so as to admit the Debtor's mother and sister as members of Ark Capital, as would be required under § 608.4232, Florida

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Statutes (2013).  Thus, there can be no *bona fide* dispute as to ownership of Ark Capital. Here, the Trustee has brought a declaratory judgment action, and there is also no *bona fide* dispute as to title. As such, the turnover count states a claim.

## CONCLUSION

In sum, the Complaint states a claim. Ark Capital has not challenged the adequacy of the specificity of the pleading of the allegations, as they meet and exceed such standard. The claims are typical claims brought by trustees in bankruptcy courts, authorized by long-standing Supreme Court and Eleventh Circuit precedent, and the Trustee is clearly the proper party-in-interest to bring them. Accordingly, this Court should deny the Motion with prejudice.

WHEREFORE, the Trustee respectfully requests that the Court enter an order denying the Motion and grant any and all further relief this Court deems fair and equitable.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 9, 2014, the foregoing document was served via the Court's Notice of Electronic Filing upon the Registered Users listed on the attached **<u>Exhibit 1</u>**.

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Fla. Bar No: 0592749
Dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for Trustee*

## <u>SERVICE LIST</u>

Electronic Mail Notice List
The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

- Howard D. Dubosar     hdubosar@dubosarnavon.com,
  RSheres@dubosarnavon.com;KDoyle@dubosarnavon.com;TNovak@dubosarnavon.com
- Daniel Gielchinsky     dan@dyglaw.com
- Daniel N Gonzalez     dgonzalez@melandrussin.com,
  ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Robert F. Reynolds     rreynolds@slatkinreynolds.com, imalcolm@slatkinreynolds.com

**EXHIBIT 1**