

**ORDERED in the Southern District of Florida on January 13, 2015.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

Tagged Opinion

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 13-40134-LMI

ISAAC KODSI, Chapter 7,                                   Chapter 7

       Debtor.
_____/
BARRY E. MUKAMAL, CHAPTER 7          Adversary No. 14-01763-LMI
TRUSTEE FOR THE ESTATE OF ISAAC
KODSI,

       Plaintiff,
v.

ARK CAPITAL GROUP, LLC, AMY
KODSI, AND NANCY KODSI,

       Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

    This matter came before me on December 12, 2014 at 10:00 a.m. on Ark Capital Group

LLC's Motion to Dismiss Trustee's Complaint with Prejudice (ECF #13) ("Motion to Dismiss").

I have considered the Motion to Dismiss, the Response (ECF #33) and the Supplemental Response (ECF #34) filed by the Trustee, Barry Mukamal (the "Trustee"), and the argument of counsel.  For the reasons set forth below, the Motion to Dismiss is Granted in Part and Denied in Part.

## BACKGROUND

The Trustee has accused the Debtor, Isaac Kodsi (the "Debtor"), of using various entities —primarily limited liability companies and corporations—to shelter his assets from significant debts he has incurred over the years, many of which resulted in lawsuits or judgments.  These entities are owned by various of the Debtor's family members, law partners, and friends, but, for the most part, according to the Trustee, the Debtor manages, operates, and receives funding from, these same entities.  The Trustee alleges this funding supports the Debtor's post-petition spending of thousands of dollars each month—for an elaborate home, private schooling for his children and other discretionary expenses.[1]  One of these entities is Ark Capital, which, at one point was owned by the Debtor, who remains its managing member according to the Florida Department of State database. However, Ark Capital is now allegedly owned by the Debtor's sister and the Debtor's mother, the other two named defendants in this adversary proceeding.[2]

The Trustee filed a 14 count complaint against the Defendants, five of which counts seek relief against Ark Capital:

> Count I: Declaratory Judgment Pursuant to 28 U.S.C. § 2201 that Ark Capital is Owned by the Debtor
> Count II: Alter Ego
> Count III: Turnover Pursuant to 11 U.S.C. § 542
> Count V: Injunction and Other Equitable Relief

---

[1] In a voluntary proceeding, Debtor's post-petition income and lifestyle would be subject to certain scrutiny under 11 U.S.C. §707(a)(3).  However, the Debtor's bankruptcy was initiated as an involuntary proceeding, which petition ultimately, the Debtor decided not to contest.
[2] The Trustee alleges that the Debtor testified in a pre-petition state court action that he transferred his 100% interest in Ark Capital to his mother and sister.

Count VII: Substantive Consolidation

Ark Capital seeks dismissal of all the counts against it for the reasons which will be addressed in this opinion. With one exception, the Trustee opposes the relief Ark Capital seeks.

The two most significant issues raised by the Motion to Dismiss relate to the count for alter ego, that is, that Ark Capital is the alter ego of the Debtor, and the count for substantive consolidation of Ark Capital, a non-debtor entity, with the Debtor. Ark Capital also wishes to strike the complaint for impermissibly putting forth a "shotgun pleading." Finally, Ark Capital argues turnover is inappropriate in this case because the property for which the Trustee seeks turnover has not yet been found to be property of the estate.

## **<u>SUBSTANTIVE CONSOLIDATION</u>**

Substantive consolidation is an equitable remedy, pursuant to which the assets of two related entities or individuals are pooled to satisfy the liabilities of the two from the common pool. *Eastgroup Properties v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir 1991) ("*Eastgroup*"). Ark Capital argues that a court may not order substantive consolidation of a non-debtor entity with a debtor. Ark Capital acknowledges that I ruled dispositively on this issue in *Kapila v. S&G Fin. Servs., LLC* (*In re S&G Fin. Servs. of S. Florida, Inc.*), 451 B.R. 573 (Bankr. S.D. Fla. 2011) ("*S&G*"), and held, for the reasons set forth in that opinion, that a party may seek to substantively consolidate a debtor with a non-debtor. Nonetheless, Ark Capital argues that the Supreme Court's recent holding in *Law v. Siegel*, 134 S. Ct. 1188 (2014)[3] effectively revises my ruling in *S & G*, and moreover, that substantive consolidation of a debtor with a non-debtor violates the distribution scheme of 11 U.S.C. §726.

---

[3] In *Law v. Siegel*, the Supreme Court held that a bankruptcy court could not use its equitable powers to surcharge a debtor's homestead exemption in contravention of a Bankruptcy Code section that specifically prohibits such discharge. 134 S. Ct. at 1196 (referencing 11 U.S.C. §522).

Ark Capital asserts that *Law v. Siegel* prohibits substantive consolidation except in instances of individual married debtors; because the Bankruptcy Code has only one specific provision for consolidation in 11 U.S.C. §302(b), no other consolidation is possible.  However, Ark Capital's argument is not persuasive.  As I have pointed out many times since *Law v. Siegel* was decided, the case did not create any new law.  The Supreme Court made very clear in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("*Ahlers*") that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  Thus, the Supreme Court's reminder in *Law v. Siegel* is just that—a reminder.  Section 302 does not mandate consolidation, nor does its language in any way suggest that consolidation is exclusive to married couples.  Indeed, while section 302(b) invites the court to determine whether "the debtors' estates shall be consolidated," what that means is left to the court to determine.

Ark Capital also argues that substantive consolidation violates the distribution scheme of 11 U.S.C. §726, since, in the absence of substantive consolidation, Ark Capital's creditors would be entitled to a different priority of distribution.  Ark Capital is correct that, in the absence of substantive consolidation, the creditors of each unconsolidated entity enjoy their own distribution scheme.  In bankruptcy, it is the applicable distribution scheme which, in the case of this Debtor, is provided under section 726.  Because Ark Capital is not a debtor in bankruptcy at this juncture, in the absence of consolidation, its creditors would enjoy a distribution scheme laid out by applicable state law.  However, the creditors of Ark Capital will not be deprived of their non-bankruptcy expectations without notice and a hearing.  Each Ark Capital creditor must be served with a copy of the complaint so that each creditor will have the opportunity to participate in the adjudication of this issue. Moreover, the rights of, and impact on, the Ark Capital creditors must

4

be considered as part of my determination whether substantive consolidation is appropriate under the circumstances of this Debtor.[4] Nor, as I addressed in *S & G,* is substantive consolidation inconsistent with other provisions of the Bankruptcy Code. Unlike the relief requested by the trustee in *Law v. Siegel*, which sought to override specific provisions of the Bankruptcy Code, substantive consolidation does not override any provision of the Bankruptcy Code.

Finally, Ark Capital challenges the legal appropriateness of any substantive consolidation outside the marital consolidation authorized by section 302, irrespective of whether one of the parties is a non-debtor. If Ark Capital is correct and *Law v. Siegel* did create new law that eliminates substantive consolidation altogether, then let the Eleventh Circuit decide whether *Eastgroup* is no longer binding precedent. The Eleventh Circuit decided *Eastgroup* in 1991, three years after *Ahlers.*

Accordingly, the Motion to Dismiss is denied with respect to Count VII of the Complaint.

## ALTER EGO

Bringing an alter ego claim against a corporation is necessary when "maintaining the separateness of the corporation and its alter ego would allow the alter ego to avoid . . . an otherwise enforceable obligation, or the law, or that maintaining the separate corporations would be inequitable." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 703 (2d Cir. 1989). Commonly, such an action is brought against a corporation by a creditor alleging that the corporation is a mere instrumentality of an individual who owes a debt to the creditor. In order to

---

[4] "[T]he proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Eastgroup*, 935 F.2d at 249 (citations omitted). "When this showing is made, a presumption arises that creditors have not relied solely on the credit of one of the entities involved." *Id.* (internal citations and quotations omitted). "Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* "Finally, if an objecting creditor has made this showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm." *Id.* (internal citations and quotations omitted).

maintain an action for alter ego, three factors must be proven by a preponderance of the evidence:

(1) The individual dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the individual was in fact an alter ego of the corporation;
(2) The corporate form must have been used fraudulently or for an improper purpose; and
(3) The fraudulent or improper use of the corporate form caused injury to the claimant.

*Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 3rd DCA 1998) ("*Seminole Boatyard*") (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984)). *See also In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994).

In this case, the Trustee brought an action on behalf of the Debtor against Ark Capital, alleging Ark Capital has been used by the Debtor to thwart creditors. Ark Capital argues that a trustee in bankruptcy does not have standing to bring a cause of action for alter ego as such claim can only be brought by a creditor.  The Trustee and Ark Capital agree that this dispute is governed by *Baillie Lumber Co. v. Thompson* (*In re Icarus Holdings, LLC*), 391 F.3d 1315 (11th Cir. 2004) ("*Icarus I*") and turns on whether I should adopt a broad or narrow reading of *Seminole Boatyard*.[5]

In *Seminole Boatyard*, the Florida Fourth District Court of Appeals considered whether a release by a bankruptcy trustee of Florida Atlantic Marine ("FAM") of a claim of the estate against the Debtor's principal, Robert Christoph ("Christoph"), prevented a creditor of the estate, Seminole Boatyards Inc. ("Seminole Boatyard"), from suing Christoph for unpaid rent owed by FAM under an alter ego theory. *Seminole Boatyard*, 715 So. 2d 987. Christoph argued that the trustee released Seminole Boatyard's claims against him. However, in bankruptcy court, the

---

[5] In its Motion to Dismiss Ark Capital argued that alter ego is not recognized as a separate cause of action under federal law, citing to *Raimbeault v. Accurate Machine & Tool, LLC*, 2014 WL 5795187, (S.D. Fla. Oct. 2, 2014). Because Ark Capital abandoned this position at the hearing, it is not necessary for me to address the arguments made by Ark Capital or the Trustee in connection to this assertion.

trustee made clear, and Christoph's lawyer acknowledged, that it would be up to a state court to determine whether the trustee release could bar Seminole Boatyard from continuing its alter ego suit against Christoph. *Id.* at 988. The state court held that the claims asserted by Seminole Boatyard against Christoph were claims that belonged only to Seminole Boatyard. Consequently, only Seminole Boatyard, and not the bankruptcy trustee, was the real party in interest in its alter ego claim against Christoph. Because the trustee did not have standing to make an alter ego claim on behalf FAM, the trustee's release did not impact Seminole Boatyard's right to sue Christoph under *its* alter ego claim. *Id.* at 990.

Subsequently, several federal courts referred to the ruling in *Seminole Boatyard* to hold that a bankruptcy trustee for a corporate debtor does not have standing to bring an alter ego claim on behalf of the corporation because, under Florida law, only a creditor has the right to bring such claim. *See, e.g., Mullin v. Dzikowski*, 257 B.R. 356, 363 (S.D. Fla. 2000) ("Florida law is clear that a bankruptcy trustee lacks standing to assert such a claim because the money sought to be collected is not owed to the estate, but rather it is owed to the estate's creditors").

However, then the Eleventh Circuit decided *Icarus I* in 2004. The issue before the Eleventh Circuit was whether "a corporate entity in bankruptcy has exclusive standing to bring a state alter ego action against its principal." *Icarus I*, 391 F.3d at 1317. The court held that, in order to determine whether a bankruptcy trustee may bring an exclusive alter ego claim on behalf of a corporate debtor, the court must look at state law, and that a bankruptcy trustee has standing to bring a state alter ego claim if "a bankruptcy trustee's claim [is] (1) a general claim that is common to all creditors and (2) … allowed by state law."[6] *Id.*

---

[6] The Eleventh Circuit certified the second question to the Georgia Supreme Court who answered in the affirmative. <u>Baillie Lumber Co. v. Thompson</u>, 279 Ga. 288, 288 (2005). Thereafter, applying Georgia law, the Eleventh Circuit affirmed the entire ruling of the lower court in *Baillie Lumber Co., LP v. Thompson* (*In re Icarus Holdings, LLC*), 413 F.3d 1293, 1294 (11th Cir. 2005) ("*Icarus II*").

After *Icarus I*, a few courts have addressed this issue applying Florida law.  In *In re Xenerga*, 449 B.R. 594 (Bankr. M.D. Fla. 2011), the bankruptcy court denied approval of a settlement between the bankruptcy trustee of a defunct corporation and several of its insiders. The trustee purported to settle the corporation's claims against the insiders and thus resolve the claims of creditors against the insiders.  *Id.* at 597.  The court, using *Icarus I* as a guide, cited *Seminole Boatyard* and wrote that "Florida law allows a Chapter 7 trustee to bring an alter ego action against a debtor's principals if they manipulated the corporation specifically to injure the corporation's creditors."  *Id.* at 599-600 (citing *Dania Jai-Alai*, 450 So.2d at 1120).  The bankruptcy judge held that, in Florida, while a corporation may bring an alter ego claim against its principals under certain circumstances, the claims the bankruptcy trustee was trying to settle were claims personal to a particular creditor and not to all the creditors of the corporation.  *Id.* at 601. *Compare In re C.D. Jones & Co.*, 482 B.R. 449, 455 (Bankr. N.D. Fla. 2012) (holding that Florida law permitted a corporation to bring an alter ego claim against its own insiders and that the alter ego claim at issue was one common to all creditors, thus, the estate's alter ego claim was property of the estate to be pursued solely by trustee).

Ark Capital urges me to follow *Mullin* and rely on the broad interpretation of *Seminole Boatyard* to hold that the Trustee does not have standing to bring the alter ego claim. Conversely, the Trustee argues that the interpretations of *Xenerga* and *C.D. Jones & Co.*, following the more recent precedent of *Icarus I*, is the correct reading of *Seminole Boatyard* and that therefore the Trustee does have standing.  However, both sides are wrong because neither *Icarus I* nor *Seminole Boatyard* has any application to this case.

The difference between this case and the cases cited by both the Trustee and Ark Capital is that in each case cited, the debtor was a corporation, and the issue was whether a corporation may bring an alter ego claim against its own insiders or whether only creditors of the corporation have standing to bring an alter ego claim.[7]  That is a question that must be left for another day, and hopefully, before the issue arises again, the Florida Supreme Court will provide a definitive answer.

In this case, there is nothing to debate.  At issue is whether an individual may sue an entity as an alter ego of him or herself. Intuitively, it does not make sense that such a cause of action *could* exist. Moreover, there do not appear to be any cases, in Florida or any other state, holding that an individual may bring an alter ego claim against him or herself or against a corporate entity that he or she alleges is being used as a mere instrumentality.  Therefore, it is without dispute that a bankruptcy trustee, in the shoes of an individual debtor, has no such claim either. The first prong of *Icarus I* is met, but the second is not. While the Trustee seeks to bring the alter ego claim on behalf of all creditors, applicable state law does not recognize the claim.

Accordingly, the Motion to Dismiss is granted with respect to Count II of the Complaint.

## SHOTGUN PLEADING

A "shotgun pleading" refers to a pleading that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006).  The Eleventh Circuit's primary concern is the waste of judicial resources. "[S]hotgun pleadings wreak havoc on the judicial system." *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001). Ark Capital asserts that paragraph 2, and paragraphs 19 – 45 of the Complaint are overbroad and irrelevant. Additionally,

---

[7] This is not dissimilar to the difference between direct and derivative claims—the former only belonging to shareholders and the latter only belonging to a corporation.

Ark Capital argues that the Plaintiff's incorporation by reference of paragraphs 1 – 95 in each count of the complaint violates the rule against shotgun pleadings. Having considered the arguments of counsel, I find that the paragraphs Ark Capital insists are unnecessary provide information and support for many of the counts that follow. Accordingly, while minor editing might be appropriate if I were ordering the complaint amended, the alleged excess verbiage is minimal and can be addressed in the answer.

With respect to Ark Capital's second point, although it is clear that not all the 95 paragraphs apply to each of the counts, the 95 paragraphs do apply to each of the remaining counts against Ark Capital. The other two defendants, who would have more cause to complain, have filed answers.

Accordingly, the Motion to Dismiss is denied with respect to this argument.

## **TURNOVER**

Ark Capital argues that the Trustee cannot seek turnover without first succeeding in establishing that the property for which the Trustee seeks turnover is property of the estate. The Trustee correctly counters that turnover can be sought in the same complaint that seeks to establish that the property subject of turnover is property of the estate. In this Complaint, the Trustee sought—in Count I—a declaration that Ark Capital is property of the Debtor. In Count VII, the Trustee seeks substantive consolidation of the Debtor and Ark Capital. If the Trustee succeeds on either of those counts, then the conditions precedent for relief under the turnover count has been met.[8]

Accordingly, the Motion to Dismiss is denied with respect to Count III of the Complaint.

---

[8] The Trustee argued that it is not necessary that there be separate counts seeking to establish that the property for which he seeks turnover is property of the estate, but rather, allegations in the turnover count that the property is property of the estate are sufficient. Since the Complaint frames the relief in separate counts and the turnover counts are tied to the relief sought in the other counts, it is not necessary for me to address this argument.

Adversary No. 14-01763-LMI

## <u>DECLARATORY AND INJUNCTIVE RELIEF</u>

The Trustee agrees that Count I, for declaratory relief, should be dismissed with respect to Ark Capital.  Ark Capital agrees that Count V, seeking injunctive relief, should not be dismissed if I do not dismiss all the other counts against it, which I am not.  Accordingly, the Motion to Dismiss is Granted as to Count I and Denied as to Count V.

## <u>CONCLUSION</u>

In sum, the Motion to Dismiss is granted in part and denied in part. As there is nothing to be replead, the Defendant shall have twenty-one days from the date of this order to answer the remaining counts of the Complaint.

# # #

Copies furnished to:
Robert Reynolds, Esq.
Daniel Gonzalez, Esq.

*Attorney Reynolds is directed to serve a copy of this Order upon all parties in interest and file a certificate of service with the clerk of court.*