UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                    Case No. 13-40134-LMI

ISAAC KODSI,                       Chapter 7

        Debtor.

_____/

BARRY E. MUKAMAL, CHAPTER 7         Adversary No. 14-01763-LMI
TRUSTEE FOR THE ESTATE OF ISAAC
KODSI,

        Plaintiff,

v.

ARK CAPITAL GROUP, LLC, AMY
KODSI, AND NANCY KODSI,

        Defendants.

_____/

## TRUSTEE'S RESPONSE IN OPPOSITION TO MOTIONS TO WITHDRAW THE REFERENCE

Barry E. Mukamal, the Chapter 7 Trustee for the bankruptcy estate of Isaac Kodsi (the *"Trustee"*), by and through his undersigned counsel, responds in opposition to the *Motion for Withdrawal of Reference of Adversary Proceeding to the Bankruptcy Court* [ECF No. 52] filed by Ark Capital Group LLC, and the *Motion to Withdraw the Reference* [ECF No. 49] filed by Amy Kodsi and Nancy Kodsi[1] (collectively the *"Motions"*), and states:

## PRELIMINARY STATEMENT

The Bankruptcy Court can enter final orders and judgments on all the claims at issue, and should hear and determine all matters in this proceeding. Allowing the case to proceed in the Bankruptcy Court discourages forum shopping, promotes uniformity, and conserves judicial

_____

[1]Ark Capital Group LLC, Amy Kodsi and Nancy Kodsi are referred to collectively as the *"Movants."*

resources. Even if the Bankruptcy Court is ultimately determined to lack authority to enter final orders, these factors will still weigh against withdrawal, because a Bankruptcy Court can enter proposed findings of fact and conclusions of law on dispositive issues, just a Magistrate Judge is likely to do if the reference is withdrawn. Thus, the Court should deny the Motion, but in any event, if the Court is inclined to withdraw the reference, it should withdraw the reference only for trial.

A.      Standard for Withdrawal of the Reference

Pursuant to 28 U.S.C. § 1334(a) the District Court has "original and exclusive jurisdiction of all cases under title 11." In addition, the District Court has jurisdiction over all civil proceedings arising under, arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). In accordance with 28 U.S.C. § 157(a), district courts may refer cases and proceedings under title 11 to bankruptcy courts. Pursuant to Administrative Order 2012-25 entered March 27, 2012, the United States District Court for the Southern District of Florida has referred "any and all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges of th[e] district."

A request to withdraw the reference is governed by 28 U.S.C § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The burden is on the movant to "demonstrate that sufficient 'cause' exists for withdrawal." *Wi-Sky Inflight Inc. v. Leabman (In re Wi-Sky Inflight), Inc.*, 483 B.R. 788, 792 (N.D. Ga. 2012), *citing Lubin v. Skow (In re Integrity Bancshares, Inc.)*, 2009 WL 2175857 at *2

(N.D.Ga. 2009) (*quoting TPI Int'l Airways v. FAA (In re TPI Int'l Airways)*, 222 B.R. 663, 668 (S.D.Ga.1998)). The Eleventh Circuit has made it clear that the "cause shown" standard articulated in § 157(d) "is not an empty requirement." *Parklane Hosiery. Co. Inc. v. Parklane/Atlanta Joint Venture (In re Parklane/Atlanta Joint Venture)*, 927 F.2d 532, 536 (11th Cir. 1991); *see also Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 741 (11th Cir. 2000). In fact, "without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received" by a district court. *Chrysler Credit Corp. v. Fifth Third Bank of Columbus (In re Onyx Motor Car Corp.)*, 116 B.R. 89, 91 (S.D. Ohio 1990).

While the Eleventh Circuit Court of Appeals has not specifically articulated criteria for determining "cause," the factors include (a) the advancing uniformity in bankruptcy administration, (b) decreasing forum shopping and confusion, (c) promoting the economical use of the parties' resources, and (d) facilitating the bankruptcy process. *Parklane*, at 536 n. 5 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir.1985)). As the Movants point out, additional factors can include (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) a jury demand; and (4) prevention of delay. *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 274 (M.D. Fla. 2002).

**B.      Whether or not the Bankruptcy Court can enter final orders, all factors weigh against withdrawal**

It is clear that if the Bankruptcy Court has the power to enter final orders and judgments, then the factors (a)-(d) would all weigh against withdrawal. Obviously, having a uniform system of bankruptcy courts adjudicating bankruptcy-related claims advances uniformity in bankruptcy administration. Having a single available forum for the adjudication of bankruptcy related claims decreases the nature of forum shopping and eliminates confusion, just as the single forum, and overlapping discovery promote a more economical use of the parties' resources. Finally, it is

hard to imagine that divesting a bankruptcy court of a case could never 'facilitate the bankruptcy process.'

Similarly, the additional factors all really go to a single question: whether or not the Bankruptcy Court has the power to enter final orders and judgments. If a claim is non-core or there is a jury trial[2] right not available in the Bankruptcy Court (and thus the Bankruptcy Court cannot enter final orders and judgments), then it follows that it *could* save judicial resources and prevent delay to withdraw the reference. That is, if the Bankruptcy Court is forced to enter proposed findings of fact and conclusions of law, then there will necessarily be two fora, and that factor could weigh in favor of withdrawal.

But even that (two fora versus one) argument does not hold water. As discussed in *Amato v. Henderson, Franklin, Starnes and Holt, P.A (In re Sw. Florida Heart Grp., PA)*, No. 206-CV-678-FTM-29, 2007 WL 924472, at *2 (M.D. Fla. Mar. 26, 2007), "the Bankruptcy Court is in a position to address the related non-core matters. [The movants] argue that the District Court handling both pre-trial and trial matters would 'establish familiarity with the District Court Judge', however, the parties are mistaken as to the procedures in district court." Of course, in reality, nearly all cases will have one Article III judge, and one Article I judge. As the *Amato* court observed:

> As a standard practice, pursuant to 28 U.S.C. § 636(a) and (b) . . . , all preliminary and discovery matters are handled by the Magistrate Judge. As such, by withdrawing the reference as to all proceedings, the parties would still appear before two judges. The Court finds that both judicial resources, due to the heavy civil and criminal caseloads . . . , and the parties' resources would best be conserved by maintaining preliminary matters in bankruptcy court. The Bankruptcy Court is familiar with the proceedings and the

---

[2] Here, no jury trial right is implicated. Amy Kodsi and Nancy Kodsi failed to timely request a jury trial, within the time set forth by Fed.R. Civ. P. 38, as integrated by Fed.R.Bankr.P. 9015, and all claims against Ark Capital are equitable, rather than legal, and thus no jury right arises. *See Scheurenbrand v. Wood Gundy Corp.*, 8 F.3d 1547 (11th Cir.1993) (action for rescission is equitable proceeding carrying no right to jury trial)

> parties can clearly address all pre-trial matters more efficiently
> therein. It is equally clear that the Trustee, on behalf of the debtor,
> is entitled to a trial by jury and the District Court is better equipped
> to handle that aspect of the proceeding.

*Id.*

Fundamentally, even if the Bankruptcy Court cannot enter final orders and judgments, the reference should only be withdrawn for trial, and all pretrial matters should be handled by the Bankruptcy Court, subject to the entry of proposed findings of fact and conclusions of law on dispositive matters, just as the District Court would divide labor between the District Court Judge and Magistrate Judge. But the Court need not reach that issue, because the Bankruptcy Court *can* enter final orders.

### C.    The Bankruptcy Court can enter final orders and judgments

   i.    <u>Amy Kodsi and Nancy Kodsi have consented to the entry of final orders</u>

Here, the Bankruptcy Court can enter final orders and judgments because Amy Kodsi and Nancy Kodsi, the only parties to even possibly non-core claims, have already admitted the claims are core, and thus have consented to the Bankruptcy Court entering final orders pursuant to 11 U.S.C. § 157(c)(2). Pursuant to Fed.R.Bankr.P. 7012(b), both Amy Kodsi and Nancy Kodsi were required to admit or deny that the proceedings are core. Both admitted that the proceedings are core. *See* ECF Nos. 10 & 11, ¶9. Pursuant to Rule 7012, the opportunity not to consent to a bankruptcy adjudication arises *only* if the defendant denies that the proceeding is core. *See Brook v. Ford Motor Credit Co. LLC (In re Peacock)*, 455 B.R. 810, 812 (Bankr. M.D. Fla. 2011).

Admittedly, however, post-*Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the analysis cannot end there. The question of whether one may consent to exercise of the judicial power of the United States by an Article I judge remains an open question, at least until the Supreme Court decides (this term) the case of *Wellness Int'l Network, Ltd. v. Sharif*, cert.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

granted in part, 83 U.S.L.W. 3011, (U.S. July 1, 2014) (No. 13–935). *Stern* does not affect whether the Bankruptcy Court may *hear* a proceeding, but only whether it can enter final orders and judgments. *Stern,* 131 S. Ct. at 2602. While in many ways, *Stern* left more questions than answers, there are at least a few matters which the Stern court made abundantly clear.

First, the *Stern* Court reaffirmed its holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), that an Article I judge may properly enter final orders as to matter of "public rights." *Stern*, 131 S.Ct. at 2597-98. While recognizing that its "public rights" jurisprudence "has not been entirely consistent," the Court set forth at least two categories of bankruptcy matters which constitute "public rights." *Id.* at 2611. The Court's holding commands that to determine if the Bankruptcy Court can enter final orders (absent consent), "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. In doing so, the Court distinguishes actions which stem from the bankruptcy itself (which are constitutionally core), with actions which merely augment the bankruptcy estate (which are not). *Id.*

In *Stern*, the "Supreme Court held that bankruptcy courts lack 'the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.'" *Sundale, Ltd. v. Florida Associates Capital Enterprises, LLC (In re Sundale, Ltd.)*, 499 F. App'x 887, 892-93 (11th Cir. 2012)(quoting *Stern*, 131 S. Ct. at 2620). Thus, while *Stern* held those provisions of § 157(b) which permitted the adjudication of private rights unconstitutional, it did not address if any constitutional infirmity could be cured by consent.

The question of whether a litigant may impliedly consent to adjudication of a private right matter before a bankruptcy court remains unanswered. Since *Stern*, the Fifth, Sixth, and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Seventh circuits have deemed that litigants cannot implicitly consent, while the Ninth Circuit has determined that such consent cures any constitutional concern.[3] The Eleventh Circuit has not addressed the issue. For the reasons set forth herein, the Ninth Circuit's reasoning is the only reasoning which can be rectified with the Supreme Court's longstanding jurisprudence concerning consensual adjudication before non-Article III tribunals.

The Supreme Court has noted that "Article III, § 1's guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States . . . serves to protect primarily personal, rather than structural, interests." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986). Personal constitutional interests, such as personal jurisdiction, can be waived, while structural concerns, such as subject matter jurisdiction, cannot. *Id.* at 848-49. But since the right to have a proceeding determined by an Article III judge is personal, it can be waived. *Id.*

In *Roell v. Withrow*, 538 U.S. 580 (2003), the Supreme Court decided that implied consent pursuant to 28 U.S.C § 636(c) was sufficient to permit the entry of final judgments by federal magistrate judges. Section 636(c)(1) provides similar, but even broader authority than the bankruptcy scheme. Upon consent, magistrates may enter final judgments in all civil proceedings. *Compare* 28 U.S.C. § 636(c)(1) with 28 U.S.C. § 157(c)(1).

In *Roell*, the Supreme Court rejected the argument that express consent was required for consensual adjudicative power. *Roell*, 538 U.S. at 582, 586–87.  Instead, the Supreme Court

---

[3]The Sixth Circuit has held that a litigant could not consent. *Waldman v. Stone*, 698 F.3d 910, 917-18 (6th Cir. 2012). The Ninth Circuit held that a litigant can implicitly consent through its litigation conduct, *Executive Benefits Insurance Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 556-57 (9th Cir. 2012), aff'd on other grounds, 134 S.Ct. 2165. The Seventh Circuit held that a litigant could not consent. *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir.2013), cert. granted in part, 83 U.S.L.W. 3011, (U.S. July 1, 2014) (No. 13–935). The Fifth Circuit has that all forms of consent are impermissible. *See BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, 735 F.3d 279, 286-87 (5th Cir. 2013).

affirmed that implied consent of the parties sufficed. Since *Roell*, every circuit has upheld consensual adjudication of civil matters by magistrate judges.[4] *Roell* is equally applicable here.

Even in *Stern*, the Supreme court noted (though in dicta), without question, that "parties may consent to entry of final judgment by bankruptcy judge in non-core case." *Stern*, 131 S. Ct. at 2607. In fact, the Court noted that "Vickie argues [that] a party may waive or forfeit any objections under § 157(b)(5), in the same way [that] a party can waive or forfeit an objection to the bankruptcy court finally resolving a non-core claim." *Id.*at 2606. Thus, the Trustee believes the Supreme Court will hold in *Wellness Group* that parties may consent to the entry of final orders and judgments as to private rights by Article I courts on consent of the parties.

Through their admission that the claims are core, Amy Kodsi and Nancy Kodsi consented to the entry of final orders and judgments. *Brook*, 455 B.R. at 812; *see also  In re St. Mary's Hosp.*, 117 B.R. 125, 131 (Bankr.E.D.Pa.1990) (admission that non-core proceeding is core is irrevocable consent to bankruptcy court's determination). Even if withdrawal of consent is possible, "withdrawal of consent would require a motion and showing of good cause. *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 702 (Bankr. N.D. Ill. 2011). Amy Kodsi and Nancy Kodsi have neither alleged nor shown any such cause.

Thus, the Bankruptcy Court can enter final orders and judgments as to all claims against Amy Kodsi and Nancy Kodsi.

     ii.    <u>The claims against Ark Capital are core and the Bankruptcy Court may enter final orders and judgments.</u>

---

[4] Sinclair *v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir. 1987); *Goldstein v. Kelleher*, 728 F.2d 32, 36 (1st Cir. 1984); *Collins v. Foreman*, 729 F.2d 108, 115–16 (2d Cir. 1984); *Wharton-Thomas v. United States*, 721 F.2d 922, 929–30 (3rd Cir. 1983); *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *Puryear v. Ede's Ltd.*, 731 F.2d 1153, 1154 (5th Cir. 1984); *Bell & Beckwith v. United States*, 766 F.2d 910, 912 (6th Cir. 1985); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1045 (7th Cir. 1984); *Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Refining Corp.*, 739 F.2d 1313, 1316 (8th Cir. 1984); *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 540 (9th Cir. 1984); *United States v. Dobey*, 751 F.2d 1140, 1143 (10th Cir. 1985); *Fields v. Washington Metro. Area Transit Auth.*, 743 F.2d 890, 893 (D.C. Cir. 1984); *D.L. Auld Co. v. Groma Graphics Co.*, 753 F.2d 1029, 1032 (Fed. Cir. 1985).

The only counts against Ark Capital are:

- Count II - Alter Ego
- Count III - Turnover Pursuant to 11 U.S.C. § 542
- Count V - Injunction and Other Equitable Relief
- Count VII - Substantive Consolidation

Clearly, these counts "stem from the bankruptcy itself," rather than seek to augment the estate, as would render the claims constitutionally non-core. Count II seeks a determination of what is and is not property of the estate. Given that a trustee is charged with collecting property of the estate, the determination of what is property of the estate clearly is a determination unique to the bankruptcy process. Count VII seeks substantive consolidation, which is a remedy which only could occur in the administration of a bankruptcy estate. This too must stem from the bankruptcy.

In a recent case, the Bankruptcy Court for the Southern District of Florida discussed these issues at length:

> One might argue that the plaintiff's . . . alter ego [count], and the request for an order of substantive consolidation against entities that are not themselves debtors in bankruptcy, at least formalistically appear to be attempts to augment the Debtor's bankruptcy estate. Yet the plaintiff does not pursue typical preexisting claims of the estate against the defendants. To the contrary, the plaintiff asks the Court to recognize that the defendants are not truly separate entities that they have no purpose other than to hide assets held entirely for the Debtor's benefit. The gravamen of the complaint is a request that the Court recognize that all assets held in the names of the various defendants are actually assets of the Debtor. Property of the estate includes all "equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). The plaintiff seeks a ruling that property legally held in the names of the defendants is and always has been equitably owned by the Debtor. The plaintiff then asks that such property be turned over to the plaintiff as trustee, to be administered in this chapter 7 case, and that there be an accounting so that the trustee can be sure he has obtained control over all property of the estate. The relief requested requires the Court to determine what is and is not property of the estate, a decision central to the mission of the

bankruptcy court. Ruling on these claims does not require the exercise of the judicial power of the United States. It is not a violation of Article III for this Court to enter final orders and judgments in such proceedings. . .

Finally, the Court notes that should this Court enter final orders or judgments in this case and the district court later determine that this Court was without power to do so consistent with Article III, on any issue presented, the district court may treat this Court's ruling as proposed findings of fact and conclusions of law and act accordingly. This approach is specifically sanctioned in the district court's Standing Order and is consistent with recent Supreme Court precedent. Executive Benefits Ins. Agency v. Arkison, ⸺ U.S. ⸺ ⸺, 134 S.Ct. 2165, 2175, 189 L.Ed.2d 83 (2014).

*Bakst v. Smokemist, Inc. (In re Gladstone)*, 513 B.R. 149 (Bankr.S.D.Fla. 2014). The court's reasoning in *Gladstone* is highly persuasive that determinations of alter ego and substantive consolidation must stem from the bankruptcy, and thus are public rights which the Bankruptcy Court can decide. Moreover, if the Supreme Court decides that such claims are non-core, which is also before the Court in *Wellness Group*, the *Gladstone* court recognizes that there is little prejudice, as the final judgment may be treated as findings of fact and conclusions of law to be reviewed *de novo* by the District Court.

As to the turnover and injunction counts, these two also deal with administration of the estate, which could only arise in a bankruptcy estate. The injunction against dissipating estate assets and the request for turnover of the assets arise out of the Trustee's duties to collect and marshal property of the estate under §541. Thus, these claims are constitutionally core as well.

## CONCLUSION

Because the Bankruptcy Court can enter final orders and judgments on all the claims at issue, all the factors weigh against withdrawal of the reference. Allowing the case to proceed in the Bankruptcy Court discourages forum shopping, promotes uniformity, and conserves judicial resources. In fact, whether or not the Bankruptcy Court is ultimately determined to have the

power to enter final orders, these factors will still weigh against withdrawal. Thus, the Court should deny the Motion, and withdraw the reference only for trial, if and only if the claims are determined to be non-core.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2015, the foregoing document was served via the Court's Notice of Electronic Filing upon the Registered Users listed on the attached **Exhibit 1**.

s/ Lawrence E. Pecan
Daniel N. Gonzalez, Esquire
Fla. Bar No: 0592749
Dgonzalez@melandrussin.com
Lawrence E. Pecan, Esquire
Fla. Bar No: 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## **SERVICE LIST**

Electronic Mail Notice List
The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

- Howard D. Dubosar    hdubosar@dubosarnavon.com,
  RSheres@dubosarnavon.com;KDoyle@dubosarnavon.com;TNovak@dubosarnavon.com
- Daniel Gielchinsky    dan@dyglaw.com
- Daniel N Gonzalez    dgonzalez@melandrussin.com,
  ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Robert F. Reynolds    rreynolds@slatkinreynolds.com, imalcolm@slatkinreynolds.com

**EXHIBIT 1**